## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| BENJAMIN R. DANIELS and LINDA L. DANIELS | AMERICA'S WHOLESALE LENDER, BAC HOME LOANS SERVICING LP, BANK OF AMERICA NA, COUNTRYWIDE HOME LOANS, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, JOHN DOES I AND II, AND JOHN DOES 3-10 Inclusive |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Marcus Mumford - Corvus Law Group, LLC | Steven A. Ellis (SBN 171742) \| Hong-An Vu (SBN 266268) |
| 15 West South Temple, Suite 1000 | GOODWIN PROCTER, LLP |
| Salt Lake City, UT 84101 | 601 S. Figueroa St., 41st Floor |
| Tel: 888.315.4735 | Los Angeles, CA 90017 |
| | Tel: 213.426.2500 \| Fax 213.623.1673 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 210 Land Condemnation | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☒ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |

**FOR OFFICE USE ONLY:** Case Number: EDCV11-1287

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☐ No ☒ Yes
If yes, list case number(s): 2:10-cv-09812-PA-MAN

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☒ A. Arise from the same or closely related transactions, happenings, or events; or
☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | North Carolina, Virginia, Delaware, New York |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _[signature]_     Date August 12, 2011
Hong An Vu

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 601 S. Figueroa St., 41st Floor, Los Angeles, CA 90017.

On **August 12, 2011**, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons below as follows:

**CIVIL COVER SHEET**

| | |
|---|---|
| Marcus R. Mumford<br>CORVUS LAW GROUP, LLC<br>15 West South Temple, Suite 1000<br>Salt Lake City, Utah 84101 | Counsel for Plaintiffs: *Benjamin R. Daniels*<br>and *Diana L. Daniels*<br>Tel. 888.315.4735<br>Fax. 888.316.0929<br>mrmumford@gmail.com |

☐   (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☑   (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐   (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on **August 12, 2011**, at Los Angeles, California.

Randolph Roque
(Type or print name)

(Signature)

LIBA/2211172.1

STEVEN A. ELLIS (SBN 171742)
*sellis@goodwinprocter.com*
ALISON M. NORRIS (SBN 248711)
*anorris@goodwinprocter.com*
HONG-AN VU (SBN 266268)
*hvu@goodwinprocter.com*
SHANNA M. RAMSOWER (SBN 272430)
*sramsower@goodwinprocter.com*
**GOODWIN PROCTER** LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017
Tel.: 213.426.2500
Fax: 213.623.1673

MICHAEL J. MOLONEY III (SBN 259140)
*mmoloney@goodwinprocter.com*
**GOODWIN PROCTER** LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.: 415.733.6000
Fax: 415.677.9041

Attorneys for Defendants: *America's Wholesale Lender*, a trade name for Countrywide Home Loans, Inc. (erroneously sued as America's Wholesale Lender); *Bank of America, N.A.*, successor by merger to BAC Home Loans Servicing, LP; *Countrywide Home Loans, Inc.* (erroneously sued as Countrywide Home Loans); and *Mortgage Electronic Registration Systems, Inc.* (erroneously sued as Mortgage Electronic Registration Systems)

FILED
CLERK U.S. DISTRICT COURT

AUG 12 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

BENJAMIN R. DANIELS and DIANA L. DANIELS,

    Plaintiffs,

    v.

AMERICA'S WHOLESALE LENDER; BAC HOME LOANS SERVICING LP; BANK OF AMERICA, N.A.; COUNTRYWIDE HOME LOANS;

Case No. EDCV11-1287 VAP (SPx)

**NOTICE OF REMOVAL**

[Removed from Riverside County Superior Court, Case No. INC 1104253]

LIBW/1792678.3

1   MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS; JOHN
2   DOES I AND II, AND JOHN DOES 3-
    10, inclusive,
3
                Defendants.
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

Pursuant to 28 U.S.C. §§ 1332 and 1441, defendants America's Wholesale Lender, a trade name for Countrywide Home Loans, Inc. (erroneously sued as "America's Wholesale Lender") ("AWL"); Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP ("BANA"); Countrywide Home Loans, Inc. (erroneously sued as Countrywide Home Loans) ("CHL"); and Mortgage Electronic Registration Systems, Inc. ("MERS") (erroneously sued as "Mortgage Electronic Registration Systems") (collectively, "Defendants") hereby give notice of removal of the above-captioned case, currently pending in the Superior Court of the State of California for the County of Riverside-Indio Branch as Case Number INC 1104253, to the United States District Court for the Central District of California. As grounds for removal, Defendants state the following:

## BACKGROUND

1.  On or about May 23, 2011, Plaintiffs Benjamin R. Daniels and Diana L. Daniels ("Plaintiffs") filed a Verified Complaint ("Complaint" or "Compl.") with the Clerk of the Superior Court of California, for the County of Riverside-Indio Branch (the "State Court Action"). The State Court Action was assigned Case Number INC 1104253. The Complaint along with all pleadings and papers received by Defendant and pending in the State Court Action are hereto attached as **Exhibit 1**.

2.  This lawsuit concerns real property, located at 45241 Banff Spring Street, Indio, California 92201 ("the Property"), that Plaintiffs purchased with a $479,000 loan ("the Loan") secured by a deed of trust. *See* Compl. ¶ 15; Deed of Trust (attached hereto as **Exhibit 2**).

3.  The Complaint alleges claims for declaratory judgment against all Defendants, negligent misrepresentation against BANA,[1] breach of the covenant of

---

[1] Plaintiffs style their action as against both Bank of America, N.A., and BAC Home Loans Servicing, LP, among other defendants. On July 1, 2011, BAC Home Loans Servicing, LP, merged into Bank of America, N.A. As Plaintiffs bring their negligent representation claim against both of these Defendants, and make

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

1  good faith and fair dealing against all Defendants, and seeks to quiet title in

2  Plaintiffs' favor.  Compl. ¶¶ 112-152.  Plaintiff seeks restitution of fees, charges,

3  and payments made under the Deed of Trust, declaratory and injunctive relief, and

4  attorney's fees and costs. Compl. pg. 25-26 (prayer for relief).

5  ## DIVERSITY OF CITIZENSHIP

6      4.    Diversity jurisdiction under 28 U.S.C. § 1332 exists because this action

7  is between citizens of different states and the amount in controversy exceeds

8  $75,000.

9      5.    <u>Citizenship of Parties.</u>  The properly named parties are of completely

10  diverse citizenships.

11      a)    Upon information and belief, Plaintiffs are California citizens.

12  Compl. ¶ 6.

13      b)    BAC Home Loans Servicing, LP, was merged into BANA on

14  July 1, 2011.  BANA is a national banking association whose articles of

15  association designate North Carolina as the location of its main office. Thus,

16  Bank of America, N.A. is a citizen of North Carolina for diversity purposes.

17  *See Wachovia v. Schmidt*, 546 U.S. 303, 318 (2006) (holding that for diversity

18  purposes, a national banking association is a citizen of the state designated in

19  its articles of association as its main office).

20      c)    MERS is a Delaware corporation with its principal place of

21  business in Virginia.

22      6.    America's Warehouse Lender ("AWL") is a trade name of

23  Countrywide Home Loans, Inc., a New York corporation with its principal place of

24  business in California.[2]  The citizenship of AWL, however, is disregarded in

25  allegations against them jointly in their Complaint, Defendants refer to both entities

26  as Bank of America, N.A. ("BANA") for ease of comprehension.

[2] All allegations directed at Countrywide Home Loans, Inc. are done so in the

27  context of its actions as America's Warehouse Lender.  See Compl. ¶¶ 11, 87, 125,

138-139, 141, 147.  To the extent America's Wholesale Lender is fraudulently

28  joined, Countrywide Home Loans, Inc. is fraudulently joined to the same extent.

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

1   determining whether complete diversity exists because it was fraudulently joined as

2   a defendant. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).

3   "Fraudulent joinder is a term of art." *McCabe v. General Foods Corp.*, 811 F.2d

4   1336, 1339 (9th Cir. 1987). Joinder is fraudulent if "the plaintiff fails to state a

5   cause of action against a resident defendant, and the failure is obvious according to

6   the settled rules of the state." *Id.*

7          a)     The allegations of the Complaint asserted against AWL are (i)

8   that AWL fraudulently hid the actual funding source of Plaintiffs' loans

9   (Compl. ¶¶ 15-25), (ii) that AWL knowingly participated in the securitization

10   of Plaintiffs' loans (*id.* at ¶¶ 29-33), and (iii) that AWL representatives

11   unfairly pressured Plaintiffs into signing their mortgages at unfavorable terms

12   (*id.* at ¶¶ 94-95). These allegations relate to conduct that took place on or

13   around October 5, 2004, when Plaintiffs' loans were originated, and shortly

14   thereafter, when Plaintiffs allege their loan was securitized. *Id.* at ¶¶ 15-25,

15   29-39, 66-72, 122-26, 136-147.

16          b)     The statutes of limitations have run on all claims Plaintiffs make

17   against AWL, or the claims do not state any cognizable claim for relief,

18   rendering AWL fraudulently joined as a defendant in the action. *Ritchey v.*

19   *Upjohn Drug Co.*, 139 F.3d 1313, 1319-20 (9th Cir. 1998) (the "unique"

20   defense of statute of limitations "does not truly go to the merits of the

21   plaintiff's claim in any sense," is "a kind of procedural bar" in California, and

22   "[t]herefore, under California law no cause of action [is] stated" where the

23   statute of limitations has run on the claim).

24          c)     In the First Cause of Action, Plaintiffs seek a declaratory

25   judgment that Defendants have not proved they are entitled to foreclose on

26   the Property. Compl. ¶¶ 112-126. Declaratory judgment, however, is a

27   remedy, not an independent cause of action. *Vargas v. Countrywide Home*

28   *Loans, Inc.*, No. CV 09-2309 (C.D. Cal. May 14, 2010) ("Plaintiff's claims

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

for injunctive relief and declaratory relief are remedies, and not separate claims for relief."); *Rogers v. Cal State Mortg. Co.*, No. CV F 09-2107 LJO DLB, 2010 U.S. Dist. LEXIS 6556, *47 (E.D. Cal. Jan. 8, 2010) ("A declaratory judgment is not a theory of recovery"). Moreover, the claim appears to be directed at Defendants other than AWL. *See* Compl. ¶¶ 117-120 (alleging MERS is not a valid beneficiary and has not complied with California law), 122-123 (alleging BANA may not foreclose). To the extent the claim is directed at AWL, it is necessarily derivative of Plaintiffs' other causes of action. Because Plaintiffs fail to state any other causes of action against AWL, as demonstrated below, Plaintiffs' "claim" for a declaratory judgment fails as well. *See Rendon v. Countrywide Home Loans, Inc.*, No. CVF09-1584-LJO-DLB, 2009 WL 3126400, at *14 (E.D. Cal. Sept. 24, 2009) ("The failure of [a plaintiff's] claims demonstrates the absence of an actual controversy subject to declaratory relief"). Accordingly, for each of these reasons, Plaintiff has "failed to state a cause of action" for declaratory judgment against AWL, "and the failure is obvious according to the settled rules of the state." *McCabe*, 811 F.3d at 1339.

d) The Second Cause of Action, negligent misrepresentation, pertains only to BANA, and states no allegations against AWL. Compl. ¶¶ 127-135. This cause of action does not state a claim against AWL.

e) In the Third Cause of Action, to quiet title, Plaintiff alleges that "the Plaintiffs' Trust Deeds and Notes were intentionally separated by assignment of the Trust Deeds without assignment of the Notes during the securitization process....Subsequent to securitization of the Plaintiffs' Notes, AWL [and other Defendants] have no interest in the Subject Property." Compl. ¶ 137-38. In California, the applicable period of limitations for a quiet title claim is based on the theory of relief in the underlying cause of action. *Ankoanda v. Walker –Smith*, 44 Cal. App. 4th 610 (1st Dist. 1996);

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

1    *Mukatarian v. Barmby*, 63 Cal. 2d 558 (1965).  Here, Plaintiffs appear to

2    stake their quiet title claim against AWL on allegedly fraudulent behavior by

3    AWL at the time of origination, and on the securitization of the notes and

4    Deeds of Trust shortly after origination. Compl. ¶¶ 36-39, 66-72, 94-95, 137-

5    38.  To the extent the quiet title claim is based in fraud, it is time-barred by

6    California's three-year statute of limitations.  Cal. Code Civ. Proc. § 338(d).

7    To the extent the quiet title claim is based in the securitization of the loans, no

8    claim is stated because no such claim exists.  *See, e.g., Wadhwa v. Aurora*

9    *Loan Servs., LLC*, No. S-11-1784 KJM KJN, 2011 WL 2681483, at *3-4

10   (E.D. Cal. July 8, 2011) (rejecting securitization as basis of quiet title claim);

11   *Jones v. Countrywide Homeloan*, No. CV F 11-0405 AWI JLT, 2011 WL

12   2462845, at *5 (E.D. Cal. June 17, 2011) (in context of quiet title claim, "the

13   court finds that the legal theory related to 'securitization,' to the extent it has

14   been expressed at all, is completely without support"); *Bello v. Chase Home*

15   *Finance*, No. 10cv1913 BTM (WVG), 2011 WL 133351, at *1 (S.D. Cal. Jan.

16   14, 2011) (rejecting claims based upon securitization of mortgage); *Duarte v.*

17   *Bank of America*, Civ. No. 10-00372 JMS/BMK, 2011 WL 1399127, *7 (D.

18   Haw. Apr. 12, 2011) (securitization of mortgages does not give rise to a cause

19   of action); *Wittenberg v. First Mortg. Co.*, No. 3:10-CV-58, 2011 WL

20   1357483, at *8 (N.D.W.Va. Apr. 11, 2011) ("the plaintiff has failed to cite a

21   single case...which stands for the proposition that securitization is unlawful.

22   In fact, this Court has found only cases in which district courts have rejected

23   claims based upon securitization, finding that the practice is lawful.") (citing

24   *Bello*); *Upperman v. Deutsche Bank Nat. Trust Co.*, No. 1:10-cv-149, 2010

25   WL 1610414, at *3 (E.D. Va. Apr. 16, 2010) ("federal laws explicitly allow

26   for the creation of mortgage-related securities").  Accordingly, to the extent

27   this cause of action even exists, it is barred by the applicable statute of

28   limitations, and Plaintiffs have failed to state a claim.

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

f)   Plaintiffs' Fourth Cause of Action, for breach of the covenant of good faith and fair dealing, also fails to state a claim against AWL because the statute of limitations has run.  All allegations against AWL implicate conduct on or about October 5, 2004, when Plaintiffs' loans were originated, or shortly thereafter, when the loans allegedly were securitized.  Compl. at ¶¶ 145, 147. The statute of limitations for this cause of action is three years. Cal. Code of Civ. Proc. § 337(1).  As the Complaint was filed on May 23, 2011, the statute of limitations has long since run, and Plaintiffs have not stated a claim against AWL under California law.

g)   In sum, all of Plaintiffs' attempts to state a claim against AWL are time-barred, or do not state claims that exist under California law at all. *See Ritchey*, 139 F.3d at 1320; *Rosenblatt v. Ernst & Young Intl.*, Ltd., 28 Fed. Appx. 731, 731-32 (9th Cir. 2002) (time-barred plaintiffs are "properly ignored for the purposes of diversity jurisdiction").  There is an obvious failure to state any cause of action against AWL according to the settled rules of the state, and its citizenship is accordingly disregarded for purposes of determining diversity.

7.   The citizenship of the fictitiously named Doe defendants shall be disregarded in actions removed under 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *see McCabe*, 811 F.2d at 1339.

8.   Amount in Controversy.  The amount in controversy exceeds $75,000. The Complaint concerns a Loan with an original balance of $307,000.  *See* Compl. ¶ 15; Deed of Trust.  The current principal balance of the Loan is $283,967.17.  *See* Declaration of Krista L. Johnson (attached hereto as **Exhibit 3**). Plaintiffs seek, among other forms of relief, judgment declaring that the Deed of Trust is not a lien against the Property and quieting title in Plaintiffs' favor. Compl. at pg. 26 (prayer for relief).  Thus, the amount in controversy is satisfied because Plaintiffs seek to

1  void a loan in excess of $75,000. *See Cohn v. Petsmart*, 281 F.3d 837, 840 (9th

2  Cir. 2002) ("[I]t is well established that the amount in controversy is measured by

3  the object of the litigation.").

4  **PROCEDURAL REQUIREMENTS AND LOCAL RULES**

5      9.   <u>Removal to Proper Court</u>. Pursuant to 28 U.S.C. § 1446(a), Defendants

6  are filing this Notice of Removal in the federal district court and division embracing

7  the state court where the State Court Action is pending – Indio, California.

8      10.   <u>Removal is Timely</u>. Defendants were served with the Complaint on

9  July 13, 2011. This Notice is timely filed within 30 days of service. *See* 28 U.S.C.

10  § 1446(b).

11      11.   <u>Pleadings and Process</u>. Attached hereto as **Exhibit 1** are copies of all

12  process, pleadings and orders served upon Defendant in the State Court Action.

13  *See* 28 U.S.C. § 1446(a).

14      12.   <u>Notice</u>. Attached hereto as **Exhibit 4** is a copy of the Notice of

15  Removal to All Adverse Parties, without exhibits, which will be promptly served

16  upon Plaintiff. *See* 28 U.S.C. §§ 1446(a), 1446(d). Attached hereto as **Exhibit 5** is

17  a copy of a Notice of Filing of Notice of Removal to Federal Court, without

18  exhibits, which will be promptly served upon Plaintiff and filed with the Clerk of

19  the Superior Court of California, for the County of Riverside-Indio Branch. *See* 28

20  U.S.C. § 1446(d).

21      13.   <u>Consent to Removal</u>. All Defendants whose citizenship is properly

22  considered have filed this Notice or Removal and consent to removal of this action.

23      14.   <u>Signature</u>.   This Notice of Removal is signed pursuant to Fed. R.

24  Civ. P. 11. *See* 28 U.S.C. § 1446(a).

25      15.   <u>Bond and Verification</u>.   Pursuant to Section 1016 of the Judicial

26  Improvements and Access to Justice Act of 1988, no bond is required in connection

27  with this Notice of Removal. Pursuant to Section 1016 of the Act, this Notice need

28  not be verified.

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

16.    Based upon the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and the claims properly are removed to this Court.

17.    In the event that Plaintiff seeks to remand this case, or the Court considers remand *sua sponte*, Defendants respectfully request the opportunity to submit such additional argument or evidence in support of removal as may be necessary.

WHEREFORE, this action should proceed in the United States District Court for the Central District of California, as an action properly removed thereto.

Respectfully submitted,

Dated:   August 12, 2011          By: _____

STEVEN A. ELLIS
sellis@goodwinprocter.com
ALISON M. NORRIS
anorris@goodwinprocter.com
MICHAEL J. MOLONEY III
mmoloney@goodwinprocter.com
HONG-AN VU
hvu@goodwinprocter.com
SHANNA M. RAMSOWER
sramsower@goodwinprocter.com
**GOODWIN PROCTER** LLP
601 S Figueroa St., 41st Floor
Los Angeles, California  90017

Attorneys for Defendants:  *America's Wholesale Lender, a trade name for Countrywide Home Loans, Inc.* (erroneously sued as America's Wholesale Lender*); Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP; Countrywide Home Loans, Inc.* (erroneously sued as Countrywide Home Loans); and *Mortgage Electronic Registration Systems, Inc.* (erroneously sued as Mortgage Electronic Registration Systems)

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 601 S. Figueroa St., 41st Floor, Los Angeles, CA  90017.

On **August 12, 2011**, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons below as follows:

**NOTICE OF REMOVAL**

| | |
|---|---|
| Marcus R. Mumford | Counsel for Plaintiffs: *Benjamin R. Daniels* |
| CORVUS LAW GROUP, LLC | and *Diana L. Daniels* |
| 15 West South Temple, Suite 1000 | Tel. 888.315.4735 |
| Salt Lake City, Utah  84101 | Fax. 888.316.0929 |
| | mrmumford@gmail.com |

☐ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this firm's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Los Angeles, California.

☑ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy  of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on **August 12, 2011**, at Los Angeles, California.

_____          _____
            Randolph Roque                                                   (Signature)
            (Type or print name)

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

# Exhibit 1

||||||| |||| ||||| |||| |||||
10622308

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY |
|---|---|
| | (SOLO PARA USO DE LA CORTE) |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
America's Wholesale Lender, BAC Home Loans Servicing LP, Bank of
America NA, Countrywide Home Loans, Mortgage Electronic
Registration Systems, John Does I and II, and John Does 3-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Benjamin R. Daniels and Diana L. Daniels

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 24 2011

Y. REEVES

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* 46-200 Oasis St., Indio Ca. 92201 | *(Número del Caso)* INC 1104253 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Marcus R. Mumford, 15 West South Temple, Ste 1000, Salt Lake City, Utah 84101 (888) 315-4735

| DATE: MAY 24 2011 | Clerk, by | C. Y. REEVES | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [✓] on behalf of *(specify):*

under: [✓] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|
| Judicial Council of California | | www.courtinfo.ca.gov |
| SUM-100 [Rev. July 1, 2009] | | EXHIBIT |

BEST COPY AVAILABLE

1   **CORVUS LAW GROUP, LLC**
    Marcus Mumford, (CA Bar No. 243270)

2   15 West South Temple, Suite 1000
    Salt Lake City, Utah 84101

3   888.315.4735 (phone)
    888.316.0929 (fax)

4   mrm@corvuslaw.com

5   Attorney for Plaintiffs

```
              F I L E D
   SUPERIOR COURT OF CALIFORNIA
        COUNTY OF RIVERSIDE

         MAY 23 2011

              Y. REEVES
```

6

7        **IN THE SUPERIOR COURT OF CALIFORNIA**
           **COUNTY OF RIVERSIDE**

8   BENJAMIN R. DANIELS AND DIANA L.
    DANIELS

9        Plaintiffs,

10     vs.

11  AMERICA'S WHOLESALE LENDER, BAC
    HOME LOANS SERVICING LP, BANK OF

12  AMERICA NA, COUNTRYWIDE HOME LOANS,
    MORTGAGE ELECTRONIC REGISTRATION

13  SYSTEMS, JOHN DOES I AND II, AND JOHN
    DOES 3-10 inclusive,

14

15       Defendants.

**COMPLAINT**

CASE NO.: INC 1104253

JUDGE:

16     Plaintiffs Benjamin Daniels and Diana Daniels, (hereinafter collectively referred

17  to as "Plaintiffs") by and through their counsel of record, Corvus Law Group, LLC, make

18  and file this Complaint for permanent injunctive relief and damages against America's

19

20  Wholesale Lender ("AWL"); BAC Home Loans Servicing ("BAC"); Bank of America

21  ("B of A"); Countrywide Home Loans ("Countrywide"); Mortgage Electronic

22  Registration Systems ("MERS"); JOHN DOES I and II; and JOHN DOES 3-10

23  (collectively "Defendants"). In support of this Complaint, Plaintiffs allege as follows:

24              **NATURE OF THE CASE**

25     1.    Plaintiffs bring this action in order to prevent the improper taking and/or

26

27  foreclosure of their Property by Defendants who no longer own the debt secured by the

28  Plaintiffs' Property. The Plaintiffs' also allege that BAC Home Loans Servicing and

BEST COPY AVAILABLE

1.  Bank of America negligently misled them into believing that they would be able to

2   modify their mortgage and have suffered damages as a result.  Plaintiffs further allege

3   claims for breach of the covenant of good faith and fair dealing, and quiet title against

4.  entities (and possibly individuals) that have assigned away any right or interest they may

5   have held in the Plaintiffs' Property at some time.

6
        2.      America's Wholesale Lender appears on a Promissory Note (the "First

7   Note," as described more specifically below) and Deed of Trust ("First Trust Deed," as

8   described more specifically below) as the Plaintiffs' lender, but it now disclaims this

9   status.  BAC Home Loans Servicing claims to be servicing the First Note on behalf of an

10  unnamed holder of the Note, yet it has failed to produce any evidence, despite repeated

11  requests, of the true Note holder's identity.  Significantly, Riverside County records show

12
    no evidence of the purported assignments of the First Trust Deed from America's

13
    Wholesale Lender.

14
15
        3.      America's Wholesale Lender also appears on another Promissory Note

16  (the "Second Note," as described more specifically below) and another Deed of Trust

17  ("Second Trust Deed," as described more specifically below) as the Plaintiffs' lender, but

18  it now disclaims this status.  Bank of America claims to be servicing the Second Note on

19
    behalf of an unnamed holder of the Note, yet it has failed to produce any evidence,

20
    despite repeated requests, of the true Note holder's identity.  Significantly, Riverside

21
22  County records show no evidence of the purported assignments of the Second Trust Deed

23  from America's Wholesale Lender.

24
        4.      Upon information and belief, as described more fully below, it appears

25
    that America's Wholesale Lender sold or pooled the Plaintiffs' Notes into a mortgage-

26
27
28                                      -2-

                                    COMPLAINT

EXHIBIT 1  -11-

BEST COPY AVAILABLE

1   backed security or another type of security instrument which was then sold to third-party

2   investors.

3       5.    This action, therefore, seeks to establish who "owns the debt" secured by

4   the Plaintiffs' Trust Deeds and who has the right to notice a default and foreclose.  As

5   alleged below, Plaintiffs seek a declaration that: (a) Defendants have no right to foreclose

6   on their own behalf; (b) Defendants are required to demonstrate any right they claim to

7

8   foreclose as agents of the investors in mortgage-backed securities or other types of

9   security instruments that are secured by the Plaintiffs' Trust Deeds and; (c) Failing such

10  demonstration by Defendants, a declaration that requires the third-party investors to

11  come forward to assert their interest and ownership in the Notes and their accompanying

12  right to declare default and foreclose, or to have the title quieted against them, leaving

13  only a personal obligation.

14

15  **THE PARTIES**

16      6.    Plaintiffs Benjamin and Diana Daniels, are actual citizens of California.

17  They are the borrowers/purchasers of the Property at issue.

18      7.    Defendant America's Wholesale Lender ("AWL") is trade name of

19  Countrywide Home Loans ("Countrywide"), a New York company, with its principal

20  place of business in Calabasas, California and at all times relevant herein was doing

21  business in the State of California.

22

23      8.    Defendant BAC Home Loans Servicing LP ("BAC") is a Texas company,

24  with its principal place of business in Plano, Texas and at all times relevant herein was

25  doing business in the State of California.

26

27

28

-3-

COMPLAINT

EXHIBIT 1   -12-

· F ST COPY AVAILABLE

9.      Defendant Bank of America NA ("B of A ") is a Delaware company, with its principal place of business in Charlotte, North Carolina and at all times relevant herein was doing business in the State of California.

10.     Defendant Mortgage Electronic Registration Systems ("MERS") is a Delaware company, with its principal place of business in Reston, Virginia and at all times relevant herein was doing business in the State of California.

11.     Plaintiffs are currently unaware of the true name of Defendants John Doe I and II and therefore sue these defendants using fictitious names. AWL, BAC, B of A, Countrywide, and/or MERS, through their actions, have expressed intent to notice a default and foreclose on Plaintiffs' Property.  Under California Law, AWL, BAC, B of A, Countrywide, and/or MERS must appoint a successor trustee meeting the statutory requirements of a trustee capable of carrying out said notice and foreclosure.  Defendants John Doe I and II are the successor trustees and are a necessary party for the resolution of matters at issue in this case.  Plaintiffs will amend this Complaint to assert the true names and capacities of these fictitiously named defendants after Defendant John Doe I and II's true name and capacity have been ascertained.

12.     Defendant John Does 3-10 are individuals and entities, whose identities have been withheld by the Defendants, or unknown successors in interest, or currently unknown entities who claim interest in the Property.  Plaintiffs are unaware of the true names and capacities of Defendant John Does 3-10 and therefore sue these defendants using fictitious names. Plaintiffs are informed and believe, and on that basis, allege that these fictitiously named defendants are in some manner responsible for the damage to Plaintiffs as alleged in this Complaint.  Plaintiffs will amend this Complaint to show the

-4-

COMPLAINT

EXHIBIT 1  -13-

BEST COPY AVAILABLE

1 true names and capacities of these fictitiously named defendants after their true names

2 and capacities have been ascertained.

### JURISDICTION AND VENUE

13.    The Court has jurisdiction of this action pursuant to California Code of

Civil Procedure §1060-1062.5 (declaratory judgment) and California Code of Civil

Procedure §761.020-761-.040 (quiet title).

14.    Venue is proper in the Superior Court of California, County of Riverside,

pursuant to California Code of Civil Procedure §392.

### THE PROBLEMATIC ORIGINATION OF THE LOAN

15.    Plaintiffs purchased for value, and are the owners of, the property

commonly known as 45241 Banff Spring Street, Indio, California 92201, in Riverside

County and legally referred to as LOT 41 OF TRACT NO. 29063-1, IN THE CITY OF

INDIO, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP

RECORDED IN BOOK 329, PAGES 44 THROUGH 53 OF MAPS, IN THE OFFICE

OF THE COUNTY RECORDER OF SAID COUNTY AND AMENDED BY

CERTIFICATE OF CORRECTION RECORDED APRIL 16, 2003 AS INSTRUMENT

NO. 03-269465 OF OFFICIAL RECORDS, RIVERSIDE COUNTY, CALIFORNIA.

(hereinafter "the Subject Property") under a deed thereto made and recorded in the

Riverside County Recorder's Office.

16.    On or about October 5, 2004, Plaintiffs executed a Promissory Note (the

"First Note") in favor of AWL listed as "Lender" on the loan documents (AWL may be

from time to time hereinafter referred to as "Lender").

17.    The parties to the First Note were designated as the Plaintiffs, AWL and

MERS.

-5-

COMPLAINT

EXHIBIT 1   -14-

BEST COPY AVAILABLE

18.     BAC purports to be the successor in interest of the First Note.

19.     On or about October 5, 2004, Plaintiffs made and delivered a Deed of Trust (hereinafter "the First Trust Deed"), purporting to convey the Subject Property in trust for the purposes recited therein to CTC Real Estate Services as Trustee.  The First Trust Deed was thereafter recorded in the Riverside County Recorder's Office.

20.     On or about October 5, 2004, Plaintiffs executed a Promissory Note (the "Second Note") in favor of AWL listed as "Lender" on the loan documents (AWL may be from time to time hereinafter referred to as "Lender").

21.     The parties to the Second Note were designated as the Plaintiffs, AWL and MERS.

22.     B of A purports to be the successor in interest of the Second Note.

23.     On or about October 5, 2004, Plaintiffs made and delivered a Deed of Trust (hereinafter "the Second Trust Deed"), purporting to convey the Subject Property in trust for the purposes recited therein to CTC Real Estate Services as Trustee.  The Second Trust Deed was thereafter recorded in the Riverside County Recorder's Office.

24.     The parties to the Trust Deeds, which are contracts of adhesion, were the Plaintiffs and Mortgage Electronic Registration System ("solely as nominee for Lender", and as purported "Beneficiary" in boilerplate). The Trust Deeds named AWL as the "Lender" but, unbeknownst to the Plaintiffs, AWL did not fund the mortgages and had no intention of funding the mortgages.

25.     Yet, pursuant to the Trust Deeds, only the "Lender" may cause the Trustee to execute written notice of the occurrence of an event of default as well as the Lender's election to cause the Subject Property to be sold.

-6-

COMPLAINT

EXHIBIT 1  -15-

BEST COPY AVAILABLE

26.     As discussed below, upon information and belief, funding for the Notes was actually provided by investors in mortgage-backed securities, who bought undivided interests in a revenue stream originating from a large pool of mortgages.

27.     In fact, BAC and B of A, who claim to be servicing the loans have misrepresented or purposefully withheld the identity of the "Note Holder" as defined under Plaintiffs' Promissory Notes, and the "Beneficiary" as defined under Plaintiffs' Trust Deeds.

28.     BAC and B of A have failed to present evidence, upon Plaintiffs' numerous pre-litigation written and verbal requests, regarding the unidentified and/or misrepresented current foreclosor's authority to foreclose, to which BAC and B of A did not respond at all.  BAC and B of A have consistently obfuscated Plaintiffs' numerous requests for basic information (about who owned their Notes, and who was being paid for them, and in what amounts).

**THE FUNDING AND SECURITIZATION**

29.     The Plaintiffs' loans were funded by an undisclosed warehouse lender, which received the funds from, or was reimbursed by, investors in securities backed by this mortgage.  When the warehouse lender transferred the Notes to a securitization pool, it transferred and lost any interest in the Notes and Trust Deeds.

30.     On information and belief, AWL tailored the Plaintiffs' loans to meet the particular specifications of the ultimate purchaser(s) of the Notes.

31.     Upon information and belief AWL's function was limited to obtaining the Notes, in exchange for a fee, as a preliminary step to "securitization" of the debts as described above.

-7-

COMPLAINT

EXHIBIT 1   -16-

BEST COPY AVAILABLE

32. Plaintiffs' Notes were, in fact, securitized and sold to investors in mortgage-backed securities, which were secured in part by the Subject Property.

33. Upon information and belief, all Defendants knew of and/or participated in the securitization of the Notes.

34. Because of the securitization of the Notes, Plaintiffs have been unable to communicate directly with the holder of their Notes, which Plaintiffs reasonably contemplated to be a material term of their agreement and which was a material term of their agreement.

35. Because of the securitization of the Notes, Plaintiffs have been unable to discern the true owner of their Notes.

36. Plaintiffs' Trust Deeds and Notes were intentionally separated by assignment of the Notes during the securitization process without assignment of the related Trust Deeds.

37. Only the owners of the debt (the Notes)—the investors in the securities backed by Plaintiffs' mortgages—have the right to foreclose on the Notes' security (the Subject Property).

38. Significantly, the investor or investors in the securities backed by Plaintiffs' mortgages have not attempted to call a default upon Plaintiffs nor have the investors threatened or attempted to foreclose.

39. Upon information and belief, the Notes in question followed the ordinary course of securitization as described below.

**THE ORDINARY COURSE OF SECURITIZATION**

40. In the ordinary course of securitization, those responsible for amassing the mortgage-backed securities ("MBS"), the securitizers—generally the lenders—gathered

-8-

COMPLAINT

EXHIBIT 1 -17-

1    and lodged in a repository massive numbers of notes pursuant to what was styled a

2    "Pooling and Securitization Agreement."

3        41.    Under the Pooling and Securitization Agreement, these massive numbers

4    of notes were put in the possession of a "custodian" who acted for the investors, but had

5    no rights, interest, or ownership in the notes or the pooled securities.

6        42.    Typically, a Pooling and Service Agreement purports to set up a "common

7    law trust," for which the securitizers appoint a trustee.  Loans are sold to the trust, and

8    the debts accumulated in a trust "pool."

9        43.    Upon information and belief, this follows the traditional pattern of a

10   trustor (a purported lender or lenders) who assigns assets to a trustee, to be managed for

11   the benefit of a beneficiary.

12       44.    In securitization cases, however, the purported trust is nothing more than a

13   vehicle for transferring debt and the purported trustee acts merely as a custodian.

14       45.    Indeed, upon information and belief, Pooling and Servicing Agreements

15   typically recite that the "loans" have been "sold" to the "Trust", and that the original

16   lender retains nothing more than the right to "repurchase".

17       46.    Specifically, upon information and belief, transfer of notes and debt to the

18   trust is intended as a true sale for tax purposes, not a transfer in trust in the traditional

19   sense, meaning there is no true trust beneficiary.  Rather, the trust is simply a vehicle for

20   pooling of the debts and the subsequent sale of those debts to others: investors in the

21   MBS.

22       47.    Frequently, the "custodian" appointed by the securitizers is the original

23   lender.

-9-

COMPLAINT

EXHIBIT 1  -18-

48.     Further, the "custodian" appointed by the securitizers is not a "holder in due course" of the notes in the MBS.

49.     Because the "custodian" is not the "holder in due course" of the notes, the "custodian" has no authority to call default upon the notes in the MBS.  Nor does the custodian have the authority to foreclose the notes in the MBS.

50.     Lenders, banks, and other financial institutions setup these investment vehicles in order to create investment packages and portfolios that they could purportedly back with mortgage-backed securities and then resell to third-party investors and purchasers.

51.     Purchasers (or investors) of mortgage-backed securities ("MBS") are given "certificates" certifying their ownership interest in the pooled group of "loans" and their right to obtain payments due under the pooled group of notes.

52.     Investors in MBS do not, however, sign the Pooling and Servicing Agreement.

53.     Accordingly, the Pooling and Servicing Agreements do not bind the interests of the investors relative to the mortgages or trust deeds associated with the notes pooled in the MBS, as such would violate the Statute of Frauds.

54.     The investors in the MBS give value, and, in exchange, receive certificates, which certify their ownership of the debt.

55.     The value given by the investors in the MBS, as evinced in their MBS certificates, essentially replaces the value in the pooled and parceled notes.  In other words, the certificates the investors in the MBS receive evincing their ownership in the MBS may be regarded as replacement of the notes because the certificates of ownership

-10-

COMPLAINT

EXHIBIT 1  -19-

are the negotiated instruments that evince the debt secured by the mortgage or trust

deeds.

56.     The interest held by the investors in the MBS is not that of a trust

beneficiary: it is express ownership of debt. The trust setup by the securitizers is emptied

of assets, and the trustee thereafter typically performs no functions.

57.     Upon information and belief, there are no true beneficiaries of the

purported trust.

58.     Moreover, the securitizers appoint loan servicers for the loans, but such

appointment does not bind or involve the investors.

59.     Indeed, any Pooling and Servicing Agreement unsigned by investors in

the MBS is not an express agency agreement because it does not satisfy the Statute of

Frauds.

60.     Summarizing, in the ordinary course of securitization, Pooling and

Servicing Agreements are entered into by the securitizers, but not the investors in MBS.

The original lenders and the "trustee" or "custodian" execute the certificates of

ownership in the MBS, which are issued to but not signed by the MBS investors.

61.     Transfer of the beneficial interest in a note and thus a mortgage or trust

deed confers upon the investors in the MBS authority to declare a default and authorize

foreclosure.

62.     These are not powers which a trustee named in a trust deed can exercise

without authorization of the beneficiary. Nor, if challenged, can such authorization be

presumed.

-11-

COMPLAINT

EXHIBIT 1   -20-

63.     While it may be generally presumed that a trustee acts at the behest of the beneficiary, it is doubtful, in securitization cases, that the trustee knows who the beneficiaries are, assuming they exist, or has obtained instruction from them.

64.     Thus, trustees or custodians in the situation described above may not declare default or authorize foreclosure unless they can show their agency to act for the investors in the MBS.

65.     Thus, for example, to demonstrate a right to foreclose, it is not sufficient for BAC and B of A merely to have possession of a securitized Note. Indeed, if the Notes have been securitized, the possessors of the Notes is presumptively merely a custodian. The true owner of the Note (the debt) is the investor in the MBS. And if BAC and B of A have possession of the Notes merely as a custodian for investors in the MBS, BAC and B of A may not foreclose without demonstrating an express agency granted by all of the investors in the MBS to foreclose on their behalf.

## THE "NOTE" IN THIS ACTION

66.     Upon information and belief, the Plaintiffs' Notes were securitized in a manner similar to that described above.

67.     Upon information and belief, the Plaintiffs' Notes were pooled with similar debts pursuant to a Pooling and Servicing Agreement between Lender and a servicer, in which that servicer purported to act as trustee of a trust created thereby, for the purpose of selling such debts as securities to investors, and appointing a separate servicer of the pooled debts, and a custodian of the notes, including the Plaintiffs' Notes, evidencing such debts, for the benefit of such investors.

68.     As a result of the transfer of the Notes as part of these securities transactions, Defendants, with the possible exception of the Doe Defendants, are not the present owners of the debts under the respective Notes or the obligees thereon.

69.     Plaintiffs, and, upon information and belief, Defendants, do not know who is or are the present owners of the debt evidenced by the Notes, or the obligees thereon.

70.     Upon information and belief, neither the investors in the mortgage backed securities nor any other entity or person who had a right to payment from the Plaintiffs or who was or is a lawful beneficiary under the Trust Deed ever declared a default of the Notes executed by Plaintiffs and no true beneficiary with a beneficial interest under the Trust Deed ever declared a default under the Notes and Trust Deeds.

71.     No proper beneficiary under the Trust Deeds ever directed or will ever direct a sale of the property owned by the Plaintiffs.

72.     On information and belief, no currently named Defendant is a holder in due course of the Notes and thus all named Defendants are subject to all defenses and claims that the consumer could raise against the assignor of the Note as allowed by California law.

### MERS'S ROLE IN THE TRANSACTION AND DEFENDANTS' TACIT CONSPIRACY

73.     Mortgages are governed by two bodies of law. While the making, taking, and transfer of promissory notes is governed by the law of contracts and the Uniform Commercial Code, the making taking and transfer of trust deeds in real property is governed by the law of real property, real property assignments, and the law of recording.

74.     MERS is a clearinghouse and tracking system whereby mortgages are traded through electronic means.

-13-

COMPLAINT

EXHIBIT 1  -22-

75.     MERS claims to bypass the need for age honored and traditional recording formalities by virtue of its electronic ownership tracking system.

76.     The MERS electronic ownership tracking system is not public.

77.     On information and belief, the MERS electronic ownership tracking system is not reliable, accurate, or comprehensive and is not as simple, as easily understood, or as easily accessible, as the State real property recording system.

78.     Upon information and belief, MERS has made money in its scheme with the banks in order to avoid paying recording fees to the states for securitizations, and to smooth the securitization process.

79.     With respect to this matter, MERS was named as the beneficiary in the original Trust Deeds, but "solely as a nominee" for the "Lender."

80.     MERS risked no money and had no interest in the performance or non-performance of the obligation tied to the Trust Deeds.

81.     Indeed, MERS, although claiming to be a beneficiary under the Deeds of Trust, never had a pecuniary interest in the payments applied to the Notes.

82.     Therefore, MERS was not a valid or legitimate beneficiary under the Trust Deeds.

83.     Upon information and belief, MERS does not have a valid agency relationship with any true party in interest.

84.     Upon information and belief, MERS has never had a valid agency relationship with any true party in interest.

85.     California's deed of trust statutes contemplate that a beneficiary under a deed of trust must be a true party in interest, with the rights of a stakeholder.

-14-

COMPLAINT

EXHIBIT 1  -23-

86.     California law regarding non-judicial foreclosure does not contemplate that the "beneficiary" of the deed of trust may be a computer database.

87.     MERS is not the Lender or Beneficiary under the Trust Deeds and has no legal interest to transfer to any entity, including AWL, Countrywide BAC, or B of A.

88.     Plaintiffs' Trust Deeds recognize the true party in interest to the transaction, stating that the following rights belong to the "Lender", not MERS, the purported beneficiary:

     a.   "Lender" releases the security interest.

     b.   Notices are to be sent to "Lender".

     c.   "Lender" has the right to enforce the security instrument.

     d.   "Lender" shall appoint the substitute trustee.

     e.   "Lender" invokes the power of sale by ordering the Trustee to sell the property.

89.     Clearly, MERS is not the "Lender" and cannot properly perform any of these functions.

90.     MERS and the other Defendants misrepresented or ratified others' misrepresentations of each entity's claimed legal status in connection with the Plaintiffs' Notes and Trust Deeds.

91.     Defendants failed to disclose the true beneficiary; MERS was not a true beneficiary.

92.     In fact, no true beneficiary existed after the origination of the loan, as the interest in the Notes, arguably held by the investors in the MBS, was destroyed by the parsing, combining, and subsequent sale of the debt along with that of other borrowers' debts.

COMPLAINT

EXHIBIT 1  -24-

93.     MERS and the other Defendants had reason to know that the Trust Deeds and the assignment of the Trust Deeds contained false claims but, despite this, recorded them or caused them to be recorded in violation of California law.

**ADDITIONAL OVERREACHING AND MISFEASANCE BY DEFENDANTS**

94.     In October 2004 the Plaintiffs, as unsophisticated borrowers, refinanced their previous mortgage with defendant AWL.  Plaintiffs were also persuaded into signing what was essentially a second mortgage with AWL in the form of a Home Equity Line of Credit ("HELOC").  The amounts lent by AWL, through the First and Second Trust Deeds, exceeded both the value of the Property and the Plaintiffs' financial ability to repay the loans.

95.     The closing of the loans was a rushed and confusing process.  The Plaintiffs repeatedly asked questions and sought information from the closing agent who, without answering any of their questions, informed them that if the Plaintiffs were not able to complete all of the necessary paperwork in twenty minutes they would have to schedule another closing time next week.  The Plaintiffs, worried about completing all of the required paperwork, finished closing the loans with their questions unanswered.

96.     Since obtaining their loans in 2004, the Plaintiffs have made timely payments.  In 2010 the Plaintiffs lost their jobs and the majority of their monthly income.  These economic difficulties made it impossible for the Plaintiffs to continue making their monthly mortgage payments.

97.     In September 2010, the Plaintiffs reached out to BAC regarding their First Note in an attempt to learn what options were available to them.  The Plaintiffs spent more than two hours on the phone with BAC but were given no information as to any options or assistance that was available on the First Note.

-16-

COMPLAINT

EXHIBIT 1   -25-

98.     In November 2010 the Plaintiffs reached out to both BAC and B of A regarding their First and Second Notes.  The Plaintiffs expressed their desires to become current on their loans in order to keep their Property.  The Plaintiffs further explained to both BAC and B of A that they would have the ability to become current on the loans upon the impending liquidation of a hedge fund that Plaintiffs had invested in.  Plaintiffs requested reinstatement amounts from both BAC and B of A who failed to provide the information to Plaintiffs.  Plaintiffs further informed BAC and B of A that they had recently found employment.  The Plaintiffs divulged all of this information to BAC and B of A in good faith and in an attempt to show their efforts and desires to become current on the loans.

99.     Despite the Plaintiffs good faith efforts to explain their situation, BAC and B of A failed to offer the Plaintiffs any type of information or assistance with respect to their loans.  In fact after the Plaintiffs had informed BAC and B of A of their efforts to liquidate their hedge fund and secure employment in order to become current on their loans, the Plaintiffs were told their Property would be sold on December 23, 2010.

100.    Upon information and belief, BAC and B of A never intended to offer any type loan modification assistance to the Plaintiffs nor did it even have the authority to modify the Plaintiffs' loans.

101.    Upon information and belief, BAC and B of A refused to inform the Plaintiffs of the possibility of a loan modification in order to move forward with the foreclosure process on the Property.

102.    Upon information and belief, pursuant to the Pooling and Servicing Agreement BAC and B of A entered into with the debt pool described herein, BAC and B

-17-

COMPLAINT

EXHIBIT 1  -26-

of A were actually offered disincentives to negotiate with the Plaintiffs and were in fact incentivized and rewarded for pursuing the foreclosure process.

103.    On April 13, 2011, the Federal Deposit Insurance Corporation issued a "Statement on Enforcement Orders Against Large Servicers Related to Foreclosure Practices,"[1] ("Statement") which addressed general servicing practices by loan services such as BAC and B of A.

104.    In its Statement, the FDIC stated:

> The findings of the interagency review clearly show that the largest mortgage servicers had significant deficiencies in numerous aspects of their foreclosure processing. These deficiencies included the filing of inaccurate affidavits and other documentation in foreclosure proceedings (so-called "robo-signing"), inadequate oversight of attorneys and other third parties involved in the foreclosure process, inadequate staffing and training of employees, and the failure to effectively coordinate the loan modification and foreclosure process to ensure effective communications to borrowers seeking to avoid foreclosures.

105.    The FDIC further acknowledged:

> While today's orders put these large servicers on a path to improving their management of the foreclosure process, they do not purport to fully identify and remedy past errors in mortgage-servicing operations of large institutions. Much work remains to ensure that the servicing process functions effectively, efficiently, and fairly going forward. Importantly, these enforcement orders do not contain monetary remedial measures. *There is evidence that some level of wrongful foreclosures has occurred. It is important that servicers identify any harmed homeowners and provide appropriate remedies. This is essential to managing litigation and reputation risk, as well as fairness to borrowers.*

106.    The concerns identified by the FDIC in its Statement and the accompanying enforcement orders it issued are present here.

---

[1] Available at: http://www.fdic.gov/news/news/press/2011/pr11069.html

-18-

COMPLAINT

EXHIBIT 1  -27-

1    107.   For example, immediately after the Plaintiffs' began to experience

2  economic difficulties they reached out to both BAC and B of A seeking information and

3  options with respect to their loans.

4    108.   The Plaintiffs, in good faith, told BAC and B of A of their efforts and

5  desires to become current on the loans and their desire to keep the Property.  Plaintiffs'

6  efforts included securing new employment and liquidating a hedge fund.

7

8    109.   The Plaintiffs made numerous phone calls to both BAC and B of A in an

9  attempt to learn what options were available to them in order for them to become current

10  on their loans, reinstate their loans, and keep their Property.  BAC and B of A failed to

11  provide the Plaintiffs with any type of loan modification information or any other

12  information that would assist the Plaintiffs.

13

14    110.   The Plaintiffs, as unsophisticated borrowers, reasonably believed that by

15  informing BAC and B of A of their efforts and desires to become current on the loans,

16  BAC and B of A would work with the Plaintiffs in order for them to keep their Property.

17    111.   Upon information and belief, the information the Plaintiffs provided to

18  BAC and B of A was actually used to the Plaintiffs detriment in order to speed up the

19  foreclosure process on the Plaintiffs Property.

20

**FIRST CLAIM FOR RELIEF**

21  **(Declaratory Judgment against all Defendants)**

22    112.   Plaintiffs incorporate and reallege in full paragraphs 1 through 111 of this

23  Complaint.

24    113.   A true, present, and justiciable controversy exists between Plaintiffs and

25  Defendants.

26

27

28                -19-

114.   The Defendants in this dispute will seek affirmative relief by trying to foreclose on the Plaintiffs' Property non-judicially.

115.   Defendants, however, have failed to provide the Plaintiffs with any evidence of their authority to foreclose or a valid accounting for the Plaintiffs' Notes.

116.   This forced the Plaintiffs to sue, as is their right under the Trust Deeds' express language acknowledging Plaintiffs' rights to bring court action to assert the nonexistence of default or any other defense they have to acceleration and sale.

117.   On the foreclosure claims, the Plaintiffs are actually defending the right of a proper foreclosor (which Defendants claim they are) to foreclose, now in a judicial forum by necessity.

118.   As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name.

119.   MERS is not the real party in interest since it styles itself merely as a nominee of the assignee of the beneficial interest in the Trust Deeds, does not legitimately claim to be the holder of the Notes with the power to enforce the instrument, does not claim that it has ever been in possession of the Notes, cannot explain the circumstances surrounding the apparent absence of the original Notes, and has never identified the name of the purported assignee of the Notes from the original lender.

120.   Because: (1) instead of asserting it is owed anything on its own behalf, MERS claims to serve as the "nominee" of the entities that are actually entitled to repayment; (2) MERS does not have a valid agency relationship with any true party in interest; (3) MERS is not a valid Trust Deed beneficiary; and (4) for the other reasons laid out in this complaint, the preceding items should be judicially declared, and it should

-20-

COMPLAINT

EXHIBIT 1  -29-

be further declared that MERS does not have the authority to supersede and ignore the traditional recording methods.

121.    Defendants have refused to provide requested evidence showing the Notes' default and the authority to enforce the Trust Deeds, and have marched to a trustee's sale without right. This forced the Plaintiffs to sue, to provide a forum for relief. Consequently, the Defendants are subject to the jurisdiction of the court and required to satisfy requirements of standing and the authority to conduct the sale before conducting it.

122.    Since, to demonstrate a right to foreclose, it is not sufficient for BAC and B of A merely to have possession of the Notes and since BAC and B of A have possession of the Notes merely as a custodians for investors of the MBS, BAC and B of A may not foreclose without demonstrating an express agency to do so on behalf of the investors of the MBS.

123.    The Court should declare that because BAC and B of A are merely custodians for investors of the MBS, BAC and B of A may not foreclose without demonstrating an express agency to do so on behalf of the investors of the MBS.

124.    Moreover, the purported Lenders and Servicers are not entitled to the Subject Property, which is security for the true holder of the Note—the investors in the MBS, upon information and belief. The purported Lenders and Servicers parted with no money and they are entitled to collect none. The Court should declare and enter an injunction to this effect.

125.    Moreover, because AWL, BAC, B of A, Countrywide, MERS (the purported Lenders and Servicers) and the other defendants cannot establish ownership of the Notes, which carries with it the rights and remedies defined in the Trust Deeds, those

-21-

COMPLAINT

EXHIBIT 1   -30-

rights cannot be legally or properly assigned to Defendants John Doe I and II.

Accordingly, the Court should declare that John Does I and II do not have the right, on

behalf of itself or on behalf of the other defendants, to accelerate the Notes, declare or

notice a default, or foreclose on the Subject Property.

126.    Because of the above facts, the Defendants should be declared to have no

right to foreclose on their own behalf or should be required to demonstrate any right they

claim to foreclose as agents of the investors in MBS.

## SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation against BAC and B of A)

127.    Plaintiffs incorporate and reallege in full paragraphs 1 through 126 of this

Complaint.

128.    The Plaintiffs, as unsophisticated borrowers, repeatedly requested

information from BAC and B of A.

129.    BAC and B of A held themselves out as the Plaintiffs' Servicers but went

beyond the actions of a typical borrower/servicer relationship by engaging in

consultations and purportedly providing advice to the Plaintiffs with respect to the

mortgages and, as a result, owed a duty to the Plaintiffs.

130.    As described above, BAC and B of A, in the course of its business,

repeatedly failed to supply or supplied false information to the Plaintiffs with respect to

their ability to qualify or obtain a loan modification.

131.    BAC and B of A failed to exercise reasonable care in making

representations to the Plaintiffs, both in writing and verbally.

-22-

COMPLAINT

EXHIBIT 1   -31-

132. BAC and B of A also failed to exercise reasonable care and diligence in obtaining relevant and necessary information from the Plaintiffs prior to making representations and giving guidance to the Plaintiffs.

133. BAC and B of A knew or should have known that the information they supplied, or failed to supply, to the Plaintiffs was inaccurate.

134. As a result of the representations made by BAC and B of A, the Plaintiffs divulged personal financial information to BAC and B of A and reasonably believed that by providing this information, the Plaintiffs would be able to become current on their loans and keep their Property.

135. The Plaintiffs have been damaged as a result of BAC's and B of A's misrepresentations in that they now face foreclosure, which may have been avoided had BAC and B of A not misrepresented facts to the Plaintiffs.

### THIRD CLAIM FOR RELIEF
### (Quiet Title against all Defendants)

136. Plaintiffs incorporate and reallege in full paragraphs 1 through 135 of this Complaint.

137. Upon information and belief, the Plaintiffs' Trust Deeds and Notes were intentionally separated by assignment of the Trust Deeds without assignment of the Notes during the securitization process, thus lodging foreclosure rights with the investors in the MBS.

138. Subsequent to securitization of the Plaintiffs' Notes, AWL, BAC, B of A, Countrywide, MERS, and John Does I and II have no interest in the Subject Property.

139. The Plaintiffs' interest in and title to the Subject Property is greater than that of AWL, BAC, B of A, Countrywide, MERS, and John Does I and II.

-23-

COMPLAINT

EXHIBIT 1 -32-

140.     The Plaintiffs have the ability to pay the outstanding debt on the Subject Property should the proper party be determined.

141.     Accordingly, title in the Subject Property should be quieted in favor of the Plaintiffs and against AWL, BAC, B of A, Countrywide, MERS, and John Does I and II.

## FOURTH CLAIM FOR RELIEF
## (PLEADED IN THE ALTERNATIVE)
### (Breach of Covenant of Good Faith and Fair Dealing against Defendants)

142.     Plaintiffs incorporate and reallege in full paragraphs 1 through 141 of this Complaint.

143.     The Trust Deeds and the Notes constitute valid and binding contracts.

144.     In California, every contract includes an implied covenant of good faith and fair dealing.

145.     BAC and B of A became a party to the Trust Deed and/or Note through the assignment of the Trust Deed and/or Note by AWL, Countrywide, and/or MERS.

146.     As a parties to the Trust Deeds and/or Notes BAC and B or A were subject to the implied covenant of good faith and fair dealing.

147.     Upon information and belief, Defendant Does may have become parties to the Trust Deeds and/or Notes through assignment by AWL, BAC, B of A, Countrywide, MERS, or other unknown individuals or entities.

148.     If assigned, Defendant Does were subject to the implied covenant of good faith and fair dealing.

149.     BAC and B of A breached the implied covenant of good faith and fair dealing by, among other things:

-24-

COMPLAINT

EXHIBIT 1 -33-

a.  Making representations and material misrepresentations to the Plaintiffs concerning the status of their Notes and the their ability to modify the terms of their Notes;

b.  Failing to present evidence, upon Plaintiffs' numerous pre-litigation written and verbal requests, including letters, regarding the unidentified and/or misrepresented current foreclosor's authority; and

c.  Failing to provide proof that it was (or is) the true holder of the Notes or that it was the authorized agent of the investors in the MBS for purposes of foreclosing the Notes.

150.   Upon information and belief, the Doe Defendants may have violated the implied covenant of good faith and fair dealing in the same manner.

151.   As a direct and proximate result of BAC's and B of A's conduct, and, upon information and belief, the conduct of the Doe Defendants, Plaintiffs have incurred, among other things, substantial damages, in an amount to be shown at trial.

152.   Moreover, Defendants' conduct has forced Plaintiffs to retain an attorney to obtain the benefits they are owed under the Agreement.  As such, Plaintiffs are entitled to recover their attorney's fees and costs associated with this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter its Order herein:

1.   Enjoining further dispositions of the subject realty pending resolution hereof;

-25-

COMPLAINT

EXHIBIT 1  -34-

2.      Declaring that Defendants lack any interest in the Subject Property which permitted them to foreclose, or attempt to foreclose, the Trust Deed and/or to sell the Subject Property;

3.      Terminating all present collection activities under any security in the Subject Property and enjoining any further such collection actions not originated by the owners of the debt;

4.      Declaring that the Trust Deed is not a lien against the Subject Property, ordering the immediate release of the Trust Deed of record, and quieting title to the Subject Property in Plaintiffs against Defendants and all claiming by, through, or under them;

5.      Refunding to Plaintiffs from Defendants, jointly and severally, all fees and charges paid under the Trust Deed, and awarding Plaintiffs costs of the action, including a reasonable attorney's fee;

6.      Offset the amount of delinquent payments or a declaration that Plaintiffs are not in default because of Defendants' misconduct concerning the underlying transaction; and/or

7.      For such other and further relief as the court deems just and equitable.


DATED: May 11 , 2011.              CORVUS LAW GROUP, LLC

                                   Marcus Mumford
                                   *Attorney for Plaintiffs*


-26-

COMPLAINT

EXHIBIT 1  -35-

LABLE

**Verification**

The undersigned, _DIANA DANIELS_ , for herself declare:

I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

DATED: May 9, 2011.

Diana L. Daniels

EXHIBIT 1 -36-

BEST COPY AVA‥ ·

**Verification**

The undersigned, *BENJAMIN DANIELS* for himself declare:

I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

DATED: May 9, 2011.

Benjamin R. Daniels

EXHIBIT 1   -37-

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
46-200 Oasis Street
Indio, CA  92201
www.riverside.courts.ca.gov

NOTICE OF ASSIGNMENT TO DEPARTMENT FOR CASE MANAGEMENT PURPOSES
AND CASE MANAGEMENT CONFERENCE (CRC 3.722)

BENJAMIN R DANIELS VS AMERICAS WHOLESALE LENDER

CASE NO. INC 1104253

This case is assigned to the HONORABLE Judge Randall D White
in Department 2H as the case management department.
The Case Management Conference is scheduled for 11/21/11
at  8:30 in Department 2H.

The plaintiff/cross-complainant shall serve a copy of this notice on
all defendants/cross-defendants who are named or added to the
complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6(2) shall be
filed in accordance with that section.

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of
California, County of Riverside, and that I am not a party to this
action or proceeding. In my capacity, I am familiar with the practices
and procedures used in connection with the mailing of correspondence.
Such correspondence is deposited in the outgoing mail of the Superior
Court. Outgoing mail is delivered to and mailed by the United States
Postal Service, postage prepaid, the same day in the ordinary course
of business. I certify that I served a copy of the foregoing NOTICE OF
ASSIGNMENT TO DEPARTMENT FOR CASE MANAGEMENT PURPOSES AND CASE
MANAGEMENT CONFERENCE (CRC 3.722) on this date, by depositing said
copy as stated above.

Court Executive Officer/Clerk

C. Y. REEVES

Date:  05/24/11          By: _____
                             C. YVONNE REEVES, Deputy Clerk

ac: cmc,cmcb,ntit,cmcc

EXHIBIT 1  -38-

Daniels v. America's Wholesale Lender, et al.
INC 1104253

Superior Court of CA
County of Riverside


Service Request:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS
ATTN: LEGAL DEPARTMENT
1818 LIBRARY STREET SUITE 300
RESTON, VIRGINIA 20190

EXHIBIT 1   -39-



$1.00
SALT LAKE
U.S. POSTAGE PAID
UNITED STATES POSTAL SERVICE
1006
20190

CERTIFIED MAIL

7010 2780 0000 9889 0100

Corvus Law Group
15 West South Temple
Suite 1000
Salt Lake City, Utah 84101

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS
ATTN: LEGAL DEPARTMENT
1818 LIBRARY STREET SUITE 300
RESTON, VIRGINIA 20190

PRIORITY MAIL®
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 107R, January 2008

EXHIBIT 1 -40-



SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
46-200 Oasis Street
Indio, CA  92201
www.riverside.courts.ca.gov

NOTICE OF ASSIGNMENT TO DEPARTMENT FOR CASE MANAGEMENT PURPOSES
AND CASE MANAGEMENT CONFERENCE (CRC 3.722)

BENJAMIN R DANIELS VS AMERICAS WHOLESALE LENDER

CASE NO. INC 1104253

This case is assigned to the HONORABLE Judge Randall D White
in Department 2H as the case management department.
The Case Management Conference is scheduled for 11/21/11
at  8:30 in Department 2H.

The plaintiff/cross-complainant shall serve a copy of this notice on
all defendants/cross-defendants who are named or added to the
complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6(2) shall be
filed in accordance with that section.

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of
California, County of Riverside, and that I am not a party to this
action or proceeding. In my capacity, I am familiar with the practices
and procedures used in connection with the mailing of correspondence.
Such correspondence is deposited in the outgoing mail of the Superior
Court. Outgoing mail is delivered to and mailed by the United States
Postal Service, postage prepaid, the same day in the ordinary course
of business. I certify that I served a copy of the foregoing NOTICE OF
ASSIGNMENT TO DEPARTMENT FOR CASE MANAGEMENT PURPOSES AND CASE
MANAGEMENT CONFERENCE (CRC 3.722) on this date, by depositing said
copy as stated above.

Court Executive Officer/Clerk

Date:  05/24/11                    By: _____
                                       C. YVONNE REEVES, Deputy Clerk

ac: cmc,cmcb,ntit,cmcc

EXHIBIT 1  -41-

POS-015

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Marcus Mumford                                    CA Bar No. 243270
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101

TELEPHONE NO: 888.315.4735     FAX NO. *(Optional):* 888.316.0929
E-MAIL ADDRESS *(Optional):* mrm@corvuslaw.com
ATTORNEY FOR *(Name):* Benjamin R. Daniels and Diana L. Daniels

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Riverside
STREET ADDRESS: 46-200 Oasis Street
MAILING ADDRESS:
CITY AND ZIP CODE: Indio CA. 92201
BRANCH NAME: Larson Justice Center

PLAINTIFF/PETITIONER: Benjamin R Daniels and Diana L. Daniels

DEFENDANT/RESPONDENT: America's Wholesale Lender, et al.

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL**

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

(MH)   JUL 1 8 2011

M. Hernandez

CASE NUMBER:
INC 1104253

TO *(insert name of party being served):* ~~BAC HOME LOANS SERVICING LP~~ Bank of America, N.A. successor by merger TO BAC HOME LOANS Servicing, L.P.

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 6/23/11

JENNY PRINCE
_____
(TYPE OR PRINT NAME)

►
_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☒ A copy of the summons and of the complaint.
2. ☐ Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: 7/13/2011

Hong-An Vu
_____
TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

►
_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory se
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

EXHIBIT 1

American LegalNet, Inc.
www.USCourtForms.com

AUG 0 2 2011

POS-015

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Marcus Mumford      CA Bar No. 243270<br>15 West South Temple, Suite 1000<br>Salt Lake City, Utah 84101<br><br>TELEPHONE NO: 888.315.4735    FAX NO. *(Optional):* 888.316.0929<br>E-MAIL ADDRESS *(Optional):* mrm@corvuslaw.com<br>ATTORNEY FOR *(Name):* Benjamin R. Daniels and Diana L. Daniels | **FOR COURT USE ONLY**<br><br>FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>(MH)   JUL 18 2011<br>M. Hernandez |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside**
  STREET ADDRESS: 46-200 Oasis Street
  MAILING ADDRESS:
  CITY AND ZIP CODE: Indio CA. 92201
  BRANCH NAME: Larson Justice Center

PLAINTIFF/PETITIONER: Benjamin R Daniels and Diana L. Daniels

DEFENDANT/RESPONDENT: America's Wholesale Lender, et al.

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>INC 1104253 |

TO *(insert name of party being served):* BANK OF AMERICA NA

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: 6/23/11

JENNY PRINCE
    (TYPE OR PRINT NAME)

► *(signature)*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☒ A copy of the summons and of the complaint.
2. ☐ Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: 7/13/2011

Hong-An Vu
TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

► *(signature)*
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

| | | |
|---|---|---|
| Form Adopted for Mandatory se<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**<br>EXHIBIT 1 | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.USCourtForms.com |

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Marcus Mumford       CA Bar No. 243270<br>15 West South Temple, Suite 1000<br>Salt Lake City, Utah 84101 | |

TELEPHONE NO: 888.315.4735    FAX NO. (Optional): 888.316.0929
E-MAIL ADDRESS (Optional): mrm@corvuslaw.com
ATTORNEY FOR (Name): Benjamin R. Daniels and Diana L. Daniels

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Riverside**
   STREET ADDRESS: 46-200 Oasis Street
   MAILING ADDRESS:
   CITY AND ZIP CODE: Indio CA. 92201
   BRANCH NAME: Larson Justice Center

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

**JUL 18 2011**
M.Hernandez

PLAINTIFF/PETITIONER: Benjamin R Daniels and Diana L. Daniels

DEFENDANT/RESPONDENT: America's Wholesale Lender, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>INC 1104253 |
|---|---|

TO (insert name of party being served): <u>COUNTRYWIDE HOME LOANS</u>

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 6/23/11

JENNY PRINCE
_____
(TYPE OR PRINT NAME)         ► (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1. ☒ A copy of the summons and of the complaint.
2. ☐ Other (specify):

(To be completed by recipient):

Date this form is signed: 7/13/2011

Hong-An Vu
_____
TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,<br>ON WHOSE BEHALF THIS FORM IS SIGNED      ► (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF<br>ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory se
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

EXHIBIT 1

American LegalNet, Inc.
www.USCourtForms.com

POS-015

AUG 02 2011

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

Marcus Mumford        CA Bar No. 243270
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101

     TELEPHONE NO: 888.315.4735    FAX NO. *(Optional)*: 888.316.0929
E-MAIL ADDRESS *(Optional)*: mrm@corvuslaw.com
ATTORNEY FOR *(Name)*: Benjamin R. Daniels and Diana L. Daniels

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Riverside**
    STREET ADDRESS: 46-200 Oasis Street
    MAILING ADDRESS:
   CITY AND ZIP CODE: Indio CA. 92201
    BRANCH NAME: Larson Justice Center

PLAINTIFF/PETITIONER: Benjamin R Daniels and Diana L. Daniels

DEFENDANT/RESPONDENT: America's Wholesale Lender, et al.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

(MH)   **JUL 18 2011**

M. Hernandez

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>INC 1104253 |
|---|---|

TO *(insert name of party being served)*: <u>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS</u>

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: 6/23/11

JENNY PRINCE
_____
            (TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:

1. ☒   A copy of the summons and of the complaint.
2. ☐   Other *(specify)*:

*(To be completed by recipient):*

Date this form is signed: 7/13/2011

Hong-An Vu
_____
TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory se<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

EXHIBIT 1

American LegalNet, Inc.
www.USCourtForms.com

# Exhibit 2

DOC # 2004-0813364
10/14/2004 08:00A Fee:69.00
Page 1 of 21
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

**Recording Requested By**



Afte
COU   610  066645927  D2  001  001

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
TONY DEL ANGEL

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
|   |   |   | 21 |      | 1 |      |       |     |       |
| A | R | L |      |      |   | COPY | LONG  | REFUND | NCHG | EXAM |

[Space Above This Line For Recording Data]

244276                                    00006664592710004
[Escrow/Closing #]                        [Doc ID #]



# DEED OF TRUST
MIN 1000157-0004099786-4

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  OCTOBER 05, 2004    , together with all Riders to this document.
**(B) "Borrower"** is
BENJAMIN R DANIELS, AND DIANA L DANIELS, HUSBAND AND WIFE AS JOINT TENANTS

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**
Page 1 of 16
VMP®-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291
CONV/VA                                                      Initials:_____  Form 3005 1/01



* 2 3 9 9 1 *



* 0 6 6 6 4 5 9 2 7 0 0 0 0 0 1 0 0 6 A *

EXHIBIT 2  -46-

DOC ID #: 00006664592710004

Borrower's address is
45241 BANFF SPRING STREET, INDIO, CA 92201
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
**(D) "Trustee"** is
CTC REAL ESTATE SERVICES
155 NORTH LAKE AVE., PASADENA, CA 91109 ,
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  OCTOBER 05, 2004       . The Note states that Borrower owes Lender
THREE HUNDRED SEVEN THOUSAND and 00/100

Dollars (U.S. $ 307,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  NOVEMBER 01, 2034       .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials:

-6A(CA) (0207)        CHL (09/02)        Page 2 of 16        Form 3005  1/01

EXHIBIT 2   -47-

DOC ID #: 0000666459271004

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                  of                  RIVERSIDE                  :

[Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 0519812855                  which currently has the address of

45241 BANFF SPRING STREET, INDIO                  ,

[Street/City]

California      92201      ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

*VMP*®  -6A(CA) (0207)      CHL (09/02)      Page 3 of 16      Initials: [signature]

Form 3005 1/01

EXHIBIT 2   -48-

DOC ID #: 00006664592710004

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 00006664592710004

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

EXHIBIT 2   -50-

DOC ID #: 0000666459271004

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

EXHIBIT 2  -51-

DOC ID #: 00000664592710004

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Initials:

-6A(CA) (0207)        CHL (09/02)              Page 7 of 16                        Form 3005 1/01

EXHIBIT 2   -52-

DOC ID #: 0000666459271004

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

EXHIBIT 2  -53-

DOC ID #: 00006664592710004

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 0000666459271004

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials:

EXHIBIT 2  -55-

DOC ID #: 0000664592710004

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)          CHL (09/02)          Page 11 of 16          Initials:          Form 3005 1/01

EXHIBIT 2   -56-

DOC ID #: 0000666459271000004

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

EXHIBIT 2   -57-

DOC ID #: 0000666592710004

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

EXHIBIT 2   -58-

DOC ID #: 0000666592710004

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

EXHIBIT 2   -59-

DOC ID #: 00006664592710004

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          BENJAMIN R. DANIELS                   -Borrower

_____          _____ (Seal)
                                          DIANA L. DANIELS                      -Borrower

                                          _____ (Seal)
                                                                                -Borrower

                                          _____ (Seal)
                                                                                -Borrower

EXHIBIT 2   -60-

DOC ID #: 00006664592710004

State of California
County of *Riverside*                                    } ss.

On *October 6, 2004* before me, *Elizabeth Sanchez*
                                                    personally appeared
*Benjamin R. Daniels and Diana L. Daniels*

~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) on the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

ELIZABETH SANCHEZ
Commission # 1413014
Notary Public - California
Riverside County
My Comm. Expires Apr 22, 2007

_____(Seal)

-6A(CA) (0207)          CHL (09/02)          Page 16 of 16          Form 3005 1/01

Initials: ____

EXHIBIT 2   -61-

# Exhibit 3

1  STEVEN A. ELLIS (SBN 171742)
   *sellis@goodwinprocter.com*
2  ALISON M. NORRIS (SBN 248711)
   *anorris@goodwinprocter.com*
3  HONG-AN VU (SBN 266268)
   *hvu@goodwinprocter.com*
4  SHANNA M. RAMSOWER (SBN 272430)
   *sramsower@goodwinprocter.com*
5  **GOODWIN PROCTER** LLP
   601 S Figueroa St., 41st Floor
6  Los Angeles, California 90017
   Tel.: 213.426.2500
7  Fax: 213.623.1673

8  MICHAEL J. MOLONEY III (SBN 259140)
   *mmoloney@goodwinprocter.com*
9  **GOODWIN PROCTER** LLP
   Three Embarcadero Center, 24th Floor
10 San Francisco, California 94111
   Tel.: 415.733.6000
11 Fax: 415.677.9041

12 Attorneys for Defendants: *America's*
   *Wholesale Lender*, a trade name for
13 Countrywide Home Loans, Inc.
   (erroneously sued as America's
14 Wholesale Lender); *Bank of America,*
   *N.A.*, successor by merger to BAC
15 Home Loans Servicing, LP;
   *Countrywide Home Loans, Inc.*
16 (erroneously sued as Countrywide Home
   Loans); and *Mortgage Electronic*
17 *Registration Systems, Inc.* (erroneously
   sued as Mortgage Electronic
18 Registration Systems)

19

20              **UNITED STATES DISTRICT COURT**

21             **CENTRAL DISTRICT OF CALIFORNIA**

22                    **WESTERN DIVISION**

23

24

25

26

27

28

*Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017*

1  BENJAMIN R. DANIELS and DIANA     Case No.
   L. DANIELS,

2                                    **DECLARATION OF KRISTA L.**
                  Plaintiffs,        **JOHNSON**

3
          v.
4
   AMERICA'S WHOLESALE LENDER;
5  BAC HOME LOANS SERVICING LP;
   BANK OF AMERICA, N.A.;
6  COUNTRYWIDE HOME LOANS;
   MORTGAGE ELECTRONIC
7  REGISTRATION SYSTEMS; JOHN
   DOES I AND II, AND JOHN DOES 3-
8  10, inclusive,

9                Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Goodwin Procter LLP**
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

2

EXHIBIT 3   -63-

## DECLARATION OF KRISTA L. JOHNSON

I, Krista L. Johnson, hereby declare as follows:

1.      I am employed by Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP ("BAC"). In my current position as Litigation Specialist, my responsibilities include monitoring and assisting with litigated default home loan servicing matters. The information set forth in this Declaration is true and correct to the best of my knowledge and belief, based upon records and information kept in the ordinary course of BAC's business.

2.      BAC is responsible for servicing the mortgage loan at issue in the above-captioned complaint.

3.      Plaintiffs Benjamin and Diana Daniels obtained a mortgage with an original principal amount of $307,000 on October 5, 2004, secured by the real property located at 45241 Banff Springs Street, Indio, CA 92201. According to BAC's records, as of August 11, 2011, the current principal balance of the loan is $283,967.17.

I declare under penalty of perjury that the foregoing is true and correct. Executed at 9:41 AM   on this 11 day of August, 2011.

KRISTA L. JOHNSON

EXHIBIT 3  -64-

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

# Exhibit 4

1  STEVEN A. ELLIS (SBN 171742)
   *sellis@goodwinprocter.com*
2  ALISON M. NORRIS (SBN 248711)
   *anorris@goodwinprocter.com*
3  HONG-AN VU (SBN 266268)
   *hvu@goodwinprocter.com*
4  SHANNA M. RAMSOWER (SBN 272430)
   *sramsower@goodwinprocter.com*
5  **GOODWIN PROCTER** LLP
   601 S Figueroa St., 41st Floor
6  Los Angeles, California 90017
   Tel.: 213.426.2500
7  Fax: 213.623.1673

8  MICHAEL J. MOLONEY III (SBN 259140)
   *mmoloney@goodwinprocter.com*
9  **GOODWIN PROCTER** LLP
   Three Embarcadero Center, 24th Floor
10 San Francisco, California 94111
   Tel.: 415.733.6000
11 Fax: 415.677.9041

12 Attorneys for Defendants: *America's
   Wholesale Lender*, a trade name for
13 Countrywide Home Loans, Inc.
   (erroneously sued as America's
14 Wholesale Lender); *Bank of America,
   N.A.*, successor by merger to BAC
15 Home Loans Servicing, LP;
   *Countrywide Home Loans, Inc.*
16 (erroneously sued as Countrywide Home
   Loans); and *Mortgage Electronic
17 Registration Systems, Inc.* (erroneously
   sued as Mortgage Electronic
18 Registration Systems)

19

20          **UNITED STATES DISTRICT COURT**

21         **CENTRAL DISTRICT OF CALIFORNIA**

22              **WESTERN DIVISION**

23 BENJAMIN R. DANIELS and DIANA          Case No.
   L. DANIELS,
24                                         **NOTICE OF REMOVAL TO ALL
                                           ADVERSE PARTIES**
            Plaintiffs,
25
        v.
26                                         [Removed from Riverside County
                                           Superior Court, Case No. INC 1104253]
27 AMERICA'S WHOLESALE LENDER;
   BAC HOME LOANS SERVICING LP;
   BANK OF AMERICA, N.A.;
28 COUNTRYWIDE HOME LOANS;

*Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017*

EXHIBIT 4   -65-

LIBW/1792499.1

1  MORTGAGE ELECTRONIC
   REGISTRATION SYSTEMS; JOHN
2  DOES I AND II, AND JOHN DOES 3-
   10, inclusive,

3
            Defendants.
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

EXHIBIT 4   -66-

1  To:      Marcus R. Mumford
            Attorney for Plaintiffs
2           15 West South Temple, Suite 1000
            Salt Lake City, Utah  92201
3

4       America's Wholesale Lender; Countrywide Home Loans, Inc.; Bank of

5  America, N.A., successor by merger to BAC Home Loans Servicing LP; and

6  Mortgage Electronic Registration Systems, Inc., hereby give notice of the removal

7  of this action on August 12, 2011 from the Superior Court of the State of California

8  for the County of Riverside, to the United States District Court for the Central

9  District of California.  A true and correct copy of the underlying Notice of Removal,

10  without exhibits, is attached hereto as **Exhibit A**.

11

12                                    Respectfully submitted,

13

14  Dated:   August 12, 2011       By: _____
                                        STEVEN A. ELLIS
15                                      *sellis@goodwinprocter.com*
                                        ALISON M. NORRIS
16                                      *anorris@goodwinprocter.com*
                                        MICHAEL J. MOLONEY III
17                                      *mmoloney@goodwinprocter.com*
                                        HONG-AN VU
18                                      *hvu@goodwinprocter.com*
                                        SHANNA M. RAMSOWER
19                                      *sramsower@goodwinprocter.com*
                                        **GOODWIN PROCTER** LLP
20                                      601 S Figueroa St., 41st Floor
                                        Los Angeles, California  90017
21

22                                      Attorneys for Defendants:  *America's*
                                        *Wholesale Lender, a trade name for*
23                                      *Countrywide Home Loans, Inc.*
                                        (erroneously sued as America's
24                                      Wholesale Lender)*; Bank of America,*
                                        *N.A., successor by merger to BAC Home*
25                                      *Loans Servicing, LP; Countrywide*
                                        *Home Loans, Inc.* (erroneously sued as
26                                      Countrywide Home Loans); and
                                        *Mortgage Electronic Registration*
27                                      *Systems, Inc.* (erroneously sued as
                                        Mortgage Electronic Registration
28                                      Systems)

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

EXHIBIT 4  -67-

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 601 S. Figueroa St., 41st Floor, Los Angeles, CA 90017.

On **August 12, 2011**, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons below as follows:

**NOTICE OF REMOVAL TO ALL ADVERSE PARTIES**

Marcus R. Mumford
CORVUS LAW GROUP, LLC
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101

Counsel for Plaintiffs: *Benjamin R. Daniels* and *Diana L. Daniels*
Tel. 888.315.4735
Fax. 888.316.0929
mrmumford@gmail.com

☐   (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☑   (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy  of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐   (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on **August 12, 2011**, at Los Angeles, California.

_____
Randolph Roque
(Type or print name)

_____
(Signature)

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

LIBW/1792499.1

1

EXHIBIT 4  -68-

# Exhibit 5

1  STEVEN A. ELLIS (SBN 171742)
   sellis@goodwinprocter.com
2  ALISON M. NORRIS (SBN 248711)
   anorris@goodwinprocter.com
3  HONG-AN VU (SBN 266268)
   hvu@goodwinprocter.com
4  SHANNA M. RAMSOWER (SBN 272430)
   sramsower@goodwinprocter.com
5  **GOODWIN PROCTER LLP**
   601 S Figueroa St., 41st Floor
6  Los Angeles, California 90017
   Tel.: 213.426.2500
7  Fax: 213.623.1673

8  MICHAEL J. MOLONEY III (SBN 259140)
   mmoloney@goodwinprocter.com
9  **GOODWIN PROCTER LLP**
   Three Embarcadero Center, 24th Floor
10 San Francisco, California 94111
   Tel.: 415.733.6000
11 Fax: 415.677.9041

12 Attorneys for Defendants: *America's Wholesale*
   *Lender*, a trade name for Countrywide Home
13 Loans, Inc. (erroneously sued as America's
   Wholesale Lender); *Bank of America, N.A.*,
14 successor by merger to BAC Home Loans
   Servicing, LP; *Countrywide Home Loans, Inc.*
15 (erroneously sued as Countrywide Home
   Loans); and *Mortgage Electronic Registration*
16 *Systems, Inc.* (erroneously sued as Mortgage
   Electronic Registration Systems)

17

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

18

**FOR THE COUNTY OF RIVERSIDE**

19

**INDIO COURT**

20

| | |
|---|---|
| 21  BENJAMIN R. DANIELS and DIANA L. DANIELS, | Case No. INC 1104253 |
| 22  Plaintiffs, | **NOTICE OF FILING OF NOTICE OF REMOVAL** |
| 23  vs. | |
| 24  AMERICA'S WHOLESALE LENDER; BAC | Dept:       2-H |
|     HOME LOANS SERVICING LP; BANK OF | Judge:      Hon. Randall D. White |
| 25  AMERICA, N.A.; COUNTRYWIDE HOME | |
|     LOANS; MORTGAGE ELECTRONIC | Complaint Filed:     May 23, 2011 |
| 26  REGISTRATION SYSTEMS; JOHN DOES I | |
|     AND II, AND JOHN DOES 3-10, inclusive, | |
| 27 | |
|     Defendants. | |
| 28 | |

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

To:    Office of the Clerk
       Superior Court of California, Riverside County
       Indio Courthouse
       The Larson Justice Center
       46-200 Oasis Street
       Indio, CA 92201

    Defendants America's Wholesale Lender; Countrywide Home Loans, Inc.; Bank of America,

N.A., successor by merger to BAC Home Loans Servicing LP; and Mortgage Electronic Registration

Systems, Inc., hereby advise the Clerk of this Court that the above-captioned case has been removed

to the United States District Court for the Central District of California, Western Division. A true

and correct copy of the underlying Notice of Removal, without exhibits, is attached hereto as Exhibit

A for lodging in the Court's filing of this matter.

    Furthermore, pursuant to 28 U.S.C. § 1446(d), this matter shall proceed no further unless and

until the case is remanded to this Court by the United States District Court.

                                   Respectfully submitted,


Dated:  August 12, 2011          By:  _____
                                      STEVEN A. ELLIS
                                      sellis@goodwinprocter.com
                                      ALISON M. NORRIS
                                      anorris@goodwinprocter.com
                                      MICHAEL J. MOLONEY III
                                      mmoloney@goodwinprocter.com
                                      HONG-AN VU
                                      hvu@goodwinprocter.com
                                      SHANNA M. RAMSOWER
                                      sramsower@goodwinprocter.com
                                      GOODWIN PROCTER LLP

                                      Attorneys for Defendants:
                                      America's Wholesale Lender, a trade name for
                                      Countrywide Home Loans, Inc. (erroneously
                                      sued as America's Wholesale Lender); Bank of
                                      America, N.A., successor by merger to BAC
                                      Home Loans Servicing, LP (erroneously sued
                                      as Bank of America, NA); Countrywide Home
                                      Loans, Inc. (erroneously sued as Countrywide
                                      Home Loans); and Mortgage Electronic
                                      Registration Systems, Inc. (erroneously sued as
                                      Mortgage Electronic Registration Systems)

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 601 S. Figueroa St., 41st Floor, Los Angeles, CA 90017.

On **August 12, 2011**, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons below as follows:

**NOTICE OF FILING OF NOTICE OF REMOVAL**

Marcus R. Mumford
CORVUS LAW GROUP, LLC
15 West South Temple, Suite 1000
Salt Lake City, Utah 92201

Counsel for Plaintiffs: *Benjamin R. Daniels*
and *Diana L. Daniels*
Tel. 888.315.4735
Fax: 888.316.0929
mrmumford@gmail.com

The documents were served by the following means:

☐ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☑ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐ (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐ (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **August 12, 2011**, at Los Angeles, California.

| | |
|---|---|
| Randolph Roque | |
| (Type or print name) | (Signature) |

Goodwin Procter LLP
601 S Figueroa St., 41st Floor
Los Angeles, California 90017

Notice of Filing of Notice of Removal

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is Sheri Pym.

The case number on all documents filed with the Court should read as follows:

## EDCV11- 1287 VAP (SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [ ] Southern Division | [X] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.