

**CORVUS LAW GROUP, LLC**
Amy Bingham, (CA Bar No. 250122)
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101
888.315.4735 (phone)
888.316.0929 (fax)
amy@corvuslaw.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

BENJAMIN R. DANIELS AND DIANA L. DANIELS

        Plaintiffs,

vs.

AMERICA'S WHOLESALE LENDER, BAC HOME LOANS SERVICING LP, BANK OF AMERICA NA, COUNTRYWIDE HOME LOANS, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, JOHN DOES I AND II, AND JOHN DOES 3-10 inlcusive,

        Defendants.

**FIRST AMENDED COMPLAINT**

CASE NO.:   5:11-cv-01287-PA-MAN

JUDGE:    Hon. Percy Anderson

    Plaintiffs Benjamin Daniels and Diana Daniels, (hereinafter collectively referred to as "Plaintiffs") by and through their counsel of record, Corvus Law Group, LLC, make and file this First Amended Complaint for permanent injunctive relief and damages against America's Wholesale Lender ("AWL"); BAC Home Loans Servicing ("BAC"); Bank of America ("B of A"); Countrywide Home Loans ("Countrywide"); Mortgage Electronic Registration Systems ("MERS"); JOHN DOES I and II; and JOHN DOES 3-10 (collectively "Defendants"). In support of this Complaint, Plaintiffs allege as follows:

### NATURE OF THE CASE

    1.    Plaintiffs bring this action in order to prevent the improper taking and/or foreclosure of their property by Defendants who either no longer own the debt secured by their home or never owned the debt and who lack the right to initiate non-judicial

FIRST AMENDED COMPLAINT

foreclosure proceedings on behalf of the true owners of the debt.

2. Plaintiffs further bring this action against Defendants for damages and harm resulting from Defendants' negligent, fraudulent, and unlawful conduct concerning a residential mortgage loan and foreclosure proceedings on their property.

3. Plaintiffs allege that Defendants are third-party strangers to their mortgage loan and have no ownership interest entitling them to collect payment or declare a default. By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiffs (and millions of other American homeowners) into believing that they have the right to collect on a debt in which they have no ownership interest. In an attempt to further their fraudulent scheme and create the air of propriety surrounding their debt collection efforts, Defendants failed to execute and record an "Assignment of Deed of Trust" prior to closing and falsely represented to Plaintiffs and *to the Court* that they have the right to take Plaintiffs' property away and to collect on the debt. Through this action, Plaintiffs seek to stop Defendants' fraudulent practices, discover the true holder in due course of their Promissory Note ("Note"), and determine the status of Defendants' claims.

## THE PARTIES

4. Plaintiffs Benjamin and Diana Daniels, are actual citizens of California. They are the borrowers/purchasers of the Property at issue.

5. Defendant America's Wholesale Lender ("AWL") is trade name of Countrywide Home Loans ("Countrywide"), a New York company, with its principal place of business in Calabasas, California and at all times relevant herein was doing business in the State of California.

-2-

FIRST AMENDED COMPLAINT

6.      Defendant BAC Home Loans Servicing LP ("BAC") is a Texas company, with its principal place of business in Plano, Texas and at all times relevant herein was doing business in the State of California.

7.      Defendant Bank of America NA ("B of A ") is a Delaware company, with its principal place of business in Charlotte, North Carolina and at all times relevant herein was doing business in the State of California.

8.      Defendant Mortgage Electronic Registration Systems ("MERS") is a Delaware company, with its principal place of business in Reston, Virginia and at all times relevant herein was doing business in the State of California.

9.      Plaintiffs are currently unaware of the true name of Defendants John Doe I and II and therefore sue these defendants using fictitious names. AWL, BAC, B of A, Countrywide, and/or MERS, through their actions, have expressed intent to notice a default and foreclose on Plaintiffs' Property. Under California Law, AWL, BAC, B of A, Countrywide, and/or MERS must appoint a successor trustee meeting the statutory requirements of a trustee capable of carrying out said notice and foreclosure. Defendants John Doe I and II are the successor trustees and are a necessary party for the resolution of matters at issue in this case. Plaintiffs will amend this Complaint to assert the true names and capacities of these fictitiously named defendants after Defendant John Doe I and II's true name and capacity have been ascertained.

10.     Defendant John Does 3-10 are individuals and entities, whose identities have been withheld by the Defendants, or unknown successors in interest, or currently unknown entities who claim interest in the Property. Plaintiffs are unaware of the true names and capacities of Defendant John Does 3-10 and therefore sue these defendants using fictitious names. Plaintiffs are informed and believe, and on that basis, allege that

-3-

FIRST AMENDED COMPLAINT

these fictitiously named defendants are in some manner responsible for the damage to

Plaintiffs as alleged in this Complaint.  Plaintiffs will amend this Complaint to show the

true names and capacities of these fictitiously named defendants after their true names

and capacities have been ascertained.

### JURISDICTION AND VENUE

11.     The Court has jurisdiction of this action pursuant to 28 USC §2201,

California Code of Civil Procedure §761.020-761-.040 (quiet title) and 28 USC §1332

(a). This Court also has, pursuant to 28 U.S.C. § 1367, supplemental jurisdiction over all

other claims that are so related to claims in this action that they form part of the same

case or controversy under Article III of the United States Constitution.

12.     Venue is proper in the Central Division of the United States Court for the

District of California, pursuant to 28 U.S.C. § 1391(c).

### PROBLEMS WITH THE LOANS ORIGINATION

13.     Plaintiffs purchased for value, and are the owners of, the property

commonly known as 45241 Banff Spring Street, Indio, California 92201, in Riverside

County and legally referred to as LOT 41 OF TRACT NO. 29063-1, IN THE CITY OF

INDIO, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP

RECORDED IN BOOK 329, PAGES 44 THROUGH 53 OF MAPS, IN THE OFFICE

OF THE COUNTY RECORDER OF SAID COUNTY AND AMENDED BY

CERTIFICATE OF CORRECTION RECORDED APRIL 16, 2003 AS INSTRUMENT

NO. 03-269465 OF OFFICIAL RECORDS, RIVERSIDE COUNTY, CALIFORNIA.

(hereinafter "the Subject Property") under a deed thereto made and recorded in the

Riverside County Recorder's Office.

-4-

FIRST AMENDED COMPLAINT

14. On or about October 5, 2004, Plaintiffs executed a Promissory Note (the "First Note") in favor of AWL listed as "Lender" on the loan documents (AWL may be from time to time hereinafter referred to as "Lender").

15. The parties to the First Note included Plaintiffs, as specifically defined "Borrowers," and AWL, as the specifically defined "Lender" and MERS, as "nominee" for Lender.

16. The Note states that anyone who takes the Note by transfer becomes the "Note Holder."

17. The Note states that if the Borrower is in default, the *Note Holder* may declare the Note to be in default and accelerate the remaining balance of the Note.

18. As described in more detail below, it is unknown who the current Note Holder is because AWL attempted to assign, sell, transfer, or securitize the Note at some point after funding, thus improperly transferring the Note to an unknown third party.

19. On or about October 5, 2004, Plaintiffs made and delivered a Deed of Trust (hereinafter "the First Trust Deed"), purporting to convey the Subject Property in trust for the purposes recited therein to CTC Real Estate Services as Trustee.

20. On or about October 5, 2004, Plaintiffs executed a Promissory Note (the "Second Note") in favor of AWL listed as "Lender" on the loan documents (AWL may be from time to time hereinafter referred to as "Lender").

21. The parties to the Second Note included Plaintiffs, as specifically defined "Borrowers," and AWL, as the specifically defined "Lender" and MERS, as "nominee" for Lender.

22. The Note states that anyone who takes the Note by transfer becomes the "Note Holder."

-5-

FIRST AMENDED COMPLAINT

23. The Note states that if the Borrower is in default, the *Note Holder* may declare the Note to be in default and accelerate the remaining balance of the Note.

24. As described in more detail below, it is unknown who the current Note Holder is because AWL attempted to assign, sell, transfer, or securitize the Note at some point after funding, thus improperly transferring the Note to an unknown third party.

25. On or about October 5, 2004, Plaintiffs made and delivered a Deed of Trust (hereinafter "the Second Trust Deed"), purporting to convey the Subject Property in trust for the purposes recited therein to CTC Real Estate Services as Trustee.

26. The parties to the Trust Deeds, which are contracts of adhesion, were the Plaintiffs and Mortgage Electronic Registration System ("solely as nominee for Lender", and as purported "Beneficiary" in boilerplate). The Trust Deeds named AWL as the "Lender" but, unbeknownst to the Plaintiffs, AWL did not fund the mortgages and had no intention of funding the mortgages.

27. The Trust Deeds do not include a definition of "nominee" or of "Lender's successors and assigns."

28. The Trust Deeds were thereafter recorded in the Riverside County, California Recorder's Office.

29. As described above only the "Lender" may cause the defined Trustee under the Trust Deeds to execute written notice of the occurrence of an event of default as well as the Lender's election to cause the Subject Property to be sold.

### THE FUNDING AND SECURITIZATION

30. As reflected in the Notes, the original Lender was AWL.

31. During the Mortgage Boom Era of 2002 to 2007, Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the

-6-

FIRST AMENDED COMPLAINT

American Dream—homeownership. Mortgage lenders and investment banks aggressively lured the American people into predatory loans with teaser interest rates and into purchasing homes with inflated appraisals under the promise that the booming real estate market would continue to boom. Wall Street took the soon to be toxic loans and bundled them into "Mortgage Backed Securities" through a process known as "Securitization." These securities were then sold to investors in the form of certificates, whereby the investors became the "Certificate holders" of the securities that were to be fed by the toxic loans.

32.     Knowing that the predatory loans would soon default and turn into toxic assets, Wall Street placed their bets accordingly and bought exotic insurance products in the form of Credit Default Swaps. Thus, when the Mortgage Boom turned into a Mortgage Meltdown (which it did), they would stand to make even more profit when the mortgage insurance paid them out for their "losses."

33.     However, in their rush to "securitize" the predatory loans, Wall Street failed to actually follow their own rules and regulations, creating the instant situation where the securities are not actually backed by any mortgages at all. Under the standard model, the promissory notes were *supposed* to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificate holders"). These "true sales" allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against default. The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans, and to provide investment to bond holders, which were expected to be relatively safe.

-7-

FIRST AMENDED COMPLAINT

34.     The Securitized Trusts, if ever formed properly, are subject to and governed by (1) the Pooling and Servicing Agreement; (2) the Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York, depending on its origin; and (5) Internal Revenue Code section 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

35.     An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering. This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default. In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process—the promissory note and the security instrument (deed of trust or mortgage). In this case, on information and belief, neither document was validly transferred.

36.     Here, Plaintiffs allege that the "true sales" never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instrument and thereby, the legal, equitable and pecuniary interest in the Daniels' Notes and Mortgages. As a result thereof, BAC and B of A, which purport to be the Daniels' creditors, actually have no right, title or interest in the Daniels' Notes and Mortgages, and have no right to collect mortgage payments, demand mortgage payments or report derogatorily against the Daniels' credit.

37.     Plaintiffs further allege that, on information and belief, the trust that purportedly owns Plaintiffs' Notes and Mortgages, have been dissolved due to the disbursement and receipt of mortgage insurance payouts to BAC and B of A and the

-8-

FIRST AMENDED COMPLAINT

Certificate holders (including, but not limited to, credit default swaps and other mortgage insurance products). As a result of these mortgage insurance payouts, BAC and B of A have been paid in full on Plaintiffs' debt obligations.

38. Nonetheless, BAC and B of A attempt to take advantage of the complex structured finance system to defraud the Daniels, who have repeatedly sought to reach a financial arrangement with their true creditors and avoid the possibility of being subjected to double financial jeopardy. Plaintiffs anticipate that BAC and B of A will seek a Court-sanctioned bailout by submitting blatantly fabricated "Assignments" via a Request for Judicial Notice, thereby committing fraud on the Court, and attempting to further mislead Plaintiffs into believing that BAC and B of A are their actual creditors, and are entitled to enforce their obligations.

39. Plaintiffs do not dispute that they owe money on their mortgage obligations. Rather, Plaintiffs dispute the amount owed and seek the Court's assistance in determining who the holder(s) in due course is of their Notes and Deeds of Trust, and specifically what rights, if any, BAC and B of A have to claim a secured or unsecured interest in their Notes or Mortgages.

40. Plaintiffs' information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) their counsel's research, experience and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports and publicly available securitization documents and practices; and (4) an audit of BAC's and B of A's filings with the Securities and Exchange Commission ("SEC").

41. Plaintiffs information and belief is further based on a Securitization Audit of their Note and Mortgage that the Daniels commissioned in order to help determine: (1)

-9-

FIRST AMENDED COMPLAINT

1   the owner of their loans, and (2) the secured/unsecured status of their Notes and

2   Mortgages.

3        42.        Based on the findings of the Audit, Plaintiffs believe and allege thereon

4   that their Notes were supposed to be properly securitized as a mortgage-backed security

5   that is, "pooled" together in a trust pool.  Plaintiffs allege that their Notes were *not*

6

7   securitized and that the Trust has no legal, equitable, or monetary interest in their

8   Promissory Notes such that it can demand payment from them. Further, after conducting

9   the Securitization Audit of the Daniels chain of title and BAC's and B of A's PSA, it was

10  determined that the Daniels Notes and Mortgages were not properly conveyed into the

11  trust (if it was ever properly formed) because (1) the beneficial interest in the Daniels

12  Notes and Mortgages were not effectively-assigned, granted, or transferred to the

13  Sponsor or Depositor (who were supposed to convey Plaintiffs' Notes and Mortgages to

14  the Trust) prior to the Closing Date of the Trust and, (2) BAC and B of A failed to

15  perfect the title to the Daniels Notes and Mortgages by not *strictly* following the

16  requirements of the PSA and other laws, regulations, and agreements that govern the

17  administration of the trust. As the purported Trustees of the Trusts, BAC and B of A

18  cannot take action which is not authorized by the agreements that created and govern the

19  Trust. BAC's and B of A's attempt to acquire an interest in Plaintiffs' loans after the

20  closing date indicated in the PSA, is an ultra vires act that is violation of the Trust

21

22

23  Agreement (i.e., PSA).

24        43.        On or about October 5, 2004, the Daniels executed the First and Second

25  Note and Mortgage in favor of AWL obtaining a loan on the Property.

26

27

28                                              -10-

                                    FIRST AMENDED COMPLAINT

44.     Plaintiffs allege and believe thereon that on or around the time of

origination of their loans, AWL attempted to securitize and sell their loan to another

entity or entities. **That entity was *not* BAC, B of A, or the Trust.**

45.     Plaintiffs allege on information and belief that when AWL sold their

loans, AWL failed to transfer, or grant their Notes or Mortgages to the Sponsor,

Depositor, BAC, or B of A, and that BAC and B of A are merely third-party strangers to

the loan transactions.

46.     Furthermore, Plaintiffs allege that none of the Defendants or Doe

Defendants can demonstrate or document that Plaintiffs' Notes were ever properly

endorsed, and transferred to BAC or B of A. In fact, Plaintiffs have requested that BAC

and B of A verify and validate Plaintiffs' debts. Although this information should be

readily available to any mortgage servicer, BAC and B of A have failed to provide any

evidence to verify the owner of Plaintiffs' Notes and Mortgages or the true and correct

amount that is owed.

47.     The parties involved in the alleged Securitization and transfer of

Plaintiffs' Notes and Mortgages failed to strictly adhere to the PSA, which requires that

Plaintiffs' Notes and Mortgages be properly endorsed, transferred, accepted and —

deposited with the Trust (or its custodian) on or before the "Closing Date" indicated on

the PSA. The Trust failed to publish data for this pool with the SEC (which is required

by law) therefore, the exact "closing date" is unknown, however, upon information and

belief the "closing date" has already expired. The "closing date" is the date by which all

of the Notes and Mortgages must have been transferred into the Trust. The failure to do

so results in the Notes and Mortgages not being part of the Trust res, such that it is not a

loan that BAC or B of A can attempt to collect on.

-11-

FIRST AMENDED COMPLAINT

48.     The failure to deposit and transfer the Notes into the Trust before the closing date is a violation of the PSA. Consequently, BAC and B of A, as Trustees for the Trusts, cannot claim any legal or equitable right, title or interest in the Daniels' Notes and Mortgages, since BAC and B of A cannot take any action which is not authorized by the Securitization agreements that created and govern the Trusts.

49.     There is no duly acknowledged or recorded "Assignment" executed before the closing date of the Trusts and therefore BAC and B of A did not even transfer Plaintiffs' Notes and Mortgages to the mortgage-backed security pool. The lack of an "Assignment" raises numerous red flags as it supports that Plaintiffs' Notes and Mortgages were not deposited into the Trust by the closing date. The failure to deposit the Notes into the Trust before the closing date is a violation of the PSA.

50.     Plaintiffs do not allege or assert that they are a beneficiary or party to the PSA. Rather, Plaintiffs allege that the failure to securitize their Notes makes it impossible for BAC, B of A, or the Trust to claim, allege or assert that it was assigned, transferred or granted Plaintiffs' Notes or Mortgages, or any interest-therein, in any manner whatsoever. Plaintiffs also allege that the-failure to securitize their Notes and Mortgages has resulted in an unperfected lien that Defendants cannot enforce in any manner whatsoever.

51.     Based on a search of the public records, there has been no assignment located to establish a clear chain of title from AWL to BAC and B of A prior to the closing date. The inability to locate an assignment pre-dating the closing further demonstrates that Plaintiffs' Notes and Mortgages were not properly deposited into the Trust. The failure to deposit the Notes into the Trust before the closing date is a violation of the PSA.

-12-

FIRST AMENDED COMPLAINT

52.     The Daniels relied on BAC and B of A's misrepresentations and have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation against them; (2) the title to their home has been clouded and rendered unmarketable, as any would-be buyer of Plaintiffs' home will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiffs' home or get title insurance; (3) they have been paying the wrong parties for an undetermined amount of time and overpaid in interest that was over calculated; (4) they are unable to determine whether they sent their monthly mortgage payments to the right parties; and (5) Plaintiffs have expended significant funds to cover the cost of attorneys' fees and related costs.

**PLAINTIFFS' LOAN MODIFICATION AND DEBT VALIDATION EFFORTS**

53.     In October 2004 the Plaintiffs, as unsophisticated borrowers, refinanced their previous mortgage with defendant AWL.  Plaintiffs were also persuaded into signing what was essentially a second mortgage with AWL in the form of a Home Equity Line of Credit ("HELOC").  The amounts lent by AWL, through the First and Second Trust Deeds, exceeded both the value of the Property and the Plaintiffs' financial ability to repay the loans.

54.     The closing of the loans was a rushed and confusing process.  The Plaintiffs repeatedly asked questions and sought information from the closing agent who, without answering any of their questions, informed them that if the Plaintiffs were not able to complete all of the necessary paperwork in twenty minutes they would have to schedule another closing time next week.  The Plaintiffs, worried about completing all of the required paperwork, finished closing the loans with their questions unanswered.

-13-

FIRST AMENDED COMPLAINT

55.     Since obtaining their loans in 2004, the Plaintiffs have made timely payments. In 2010 the Plaintiffs lost their jobs and the majority of their monthly income. These economic difficulties made it impossible for the Plaintiffs to continue making their monthly mortgage payments.

56.     In September 2010, the Plaintiffs reached out to BAC regarding their First Note in an attempt to learn what options were available to them. The Plaintiffs spent more than two hours on the phone with BAC but were given no information as to any options or assistance that was available on the First Note.

57.     In November 2010 the Plaintiffs reached out to both BAC and B of A regarding their First and Second Notes. The Plaintiffs expressed their desires to become current on their loans in order to keep their Property. The Plaintiffs further explained to both BAC and B of A that they would have the ability to become current on the loans upon the impending liquidation of a hedge fund that Plaintiffs had invested in. Plaintiffs requested reinstatement amounts from both BAC and B of A who failed to provide the information to Plaintiffs. Plaintiffs further informed BAC and B of A that they had recently found employment. The Plaintiffs divulged all of this information to BAC and B of A in good faith and in an attempt to show their efforts and desires to become current on the loans.

58.     Despite the Plaintiffs good faith efforts to explain their situation, BAC and B of A failed to offer the Plaintiffs any type of information or assistance with respect to their loans. In fact after the Plaintiffs had informed BAC and B of A of their efforts to liquidate their hedge fund and secure employment in order to become current on their loans, the Plaintiffs were told their Property would be sold on December 23, 2010.

-14-

FIRST AMENDED COMPLAINT

59.     Upon information and belief, BAC and B of A never intended to offer any type loan modification assistance to the Plaintiffs nor did it even have the authority to modify the Plaintiffs' loans.

60.     Upon information and belief, BAC and B of A refused to inform the Plaintiffs of the possibility of a loan modification in order to move forward with the foreclosure process on the Property.

61.     Upon information and belief, pursuant to the Pooling and Servicing Agreement BAC and B of A entered into with the debt pool described herein, BAC and B of A were actually offered disincentives to negotiate with the Plaintiffs and were in fact incentivized and rewarded for pursuing the foreclosure process.

62.     During this entire process, Plaintiffs relied on the representations made by Defendants that BAC and B of A were their true creditors with the power to collect payments and modify their loans.  Since then, Plaintiffs have learned that none of the Defendants had or have any legal or corporate authority to collect on their loans, service the loans or make derogatory credit reports against their credit.

63.     In an effort to verify and validate their debt, the Daniels sent BAC and B of A Qualified Written Request letters on or around December 2010, pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), in which they requested that BAC and B of A (the purported mortgage servicers) provide, among other things, "The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note." 12 U.S.C. §2605(e) requires that the servicer provide this information and respond to a written request within 60 days of receipt. Defendants BAC and B of A have failed to respond.

-15-

FIRST AMENDED COMPLAINT

## THE LACK OF A PROPER ASSIGNMENT OF DEED OF TRUST INDICATES THAT NO INTEREST WAS EVER CONVEYED TO BAC OR B OF A

64.     There are no duly acknowledged Assignments recorded with Riverside County that purport to transfer an interest in Plaintiffs' Notes and Mortgages to BAC or B of A prior to closing. Plaintiffs allege that this is because no transfer of interest ever occurred.

65.     The lack of a proper "Assignment" supports the fact that Defendants are facilitating and aiding and abetting the illegal, deceptive and unlawful enforcement of Plaintiffs' Notes and Mortgages and engaging in other illegal debt collection activities.

66.     BAC and B of A have been acting in a manner to mislead the Daniels into believing that BAC and B of A have the authority to demand payments from them.

67.     Plaintiffs further allege that any amount allegedly owed under the Note(s) is subject to equitable offset by the actual, consequential, special, and punitive damages owed to Plaintiffs from Defendants, which amount is currently unknown, but will be determined upon conducting discovery. Plaintiffs believe this amount will be in excess of the amount of their debt obligation.

68.     As alleged herein, Plaintiff's Notes were not properly negotiated, endorsed and transferred to BAC and B of A, who seek to cause its purported authorized agent to collect mortgage payments and engage in other unlawful collection practices.

69.     On information and belief, none of the Defendants are present holders in due course of Plaintiffs' Notes such that they can enforce Plaintiffs' obligations.

70.     On information and belief, BAC and B of A is/was a nonholder in possession of Plaintiffs' Notes.

-16-

FIRST AMENDED COMPLAINT

71.     On information and belief, none of the Defendants are entitled to enforce Plaintiffs' Notes.

72.     Plaintiffs allege that, on information and belief, BAC and B of A fraudulently enforced and continue to enforce a debt obligation in which they have no pecuniary, equitable, or legal interest. BAC and B of A's conduct is part of a fraudulent debt collection scheme.

**PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER, SIGNIFICANT MONETARY, LEGAL AND EQUITABLE DAMAGES**

73.     The conduct described above by BAC and B of A and/or Does was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Notes and Mortgages. However, despite such knowledge, said Defendants continued to demand and collect Plaintiffs' mortgage payments.

74.     Defendants engaged and are engaging in a pattern and practice of defrauding Plaintiffs, in that, on information and belief, during the entire life of the mortgage loan, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and failed to accurately debit fees.

75.     On information and belief, at all times material, BAC and B of A had and-have actual knowledge that Plaintiffs' accounts were not accurate, but that Plaintiffs would make further payments based on Defendants' inaccurate accounts.

76.     On information and belief, Plaintiffs made payments based on the improper, inaccurate and fraudulent representations as to Plaintiffs' accounts.

77.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs overpaid in interest.

FIRST AMENDED COMPLAINT

78.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs' credit and credit score have been severely damaged. Specifically, because of the derogatory credit reporting on their credit report by BAC and B of A, the Daniels are unable to refinance out their present loan, buy another property, or sell their home.

79.     As a direct and proximate result of the actions of the Defendants set forth above, the title to Plaintiffs' home has been slandered, clouded and its, salability has been rendered unmarketable.

80.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs do not know who the current beneficiary of their Note and Mortgage actually is, such that they are now subject to double financial jeopardy.

81.     As a direct and proximate result of the actions of the Defendants set forth above, *multiple* parties can attempt to enforce Plaintiffs' debt obligation.

82.     The conduct of BAC, B of A and one or more of the Doe Defendants has led to the imminent loss of Plaintiffs' home and to pecuniary damages. The pecuniary damages include, but are not limited to, the costs over calculation and overpayment of interest, the costs of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud from their property title and attorneys' fees, in an amount to be proven at trial.

83.     The conduct of BAC, B of A and one or more of the Doe Defendants' was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiffs' Notes and Deeds of Trust, yet they set out on a course to intentionally and fraudulently cover up this defect by wrongfully purporting to be the legal owner of Plaintiffs' Notes and Mortgages, which would enable them to *illegally*

-18-

FIRST AMENDED COMPLAINT

*and fraudulently* collect on Plaintiffs' debt, and which in essence has rendered the title to the property unmarketable.

84.     The title to Plaintiffs' Property has been rendered unmarketable and unsalable because of the possibility of multiple claims being made against Plaintiffs' debt and underlying security (the Subject Property). If Plaintiffs' actual creditors are not found, Plaintiffs will be incurably prejudiced. Plaintiffs will be denied the opportunity to identify and negotiate with their *true creditors* and exercise their right to verify and validate their debt.

## FIRST CLAIM FOR RELIEF
### (Negligent Misrepresentation against BAC and B of A)

85.     Plaintiffs incorporate and reallege in full paragraphs 1 through 84 of this Complaint.

86.     The Plaintiffs, as unsophisticated borrowers, repeatedly requested information from BAC and B of A.

87.     BAC and B of A held themselves out as the Plaintiffs' Servicers but went beyond the actions of a typical borrower/servicer relationship by engaging in consultations and purportedly providing advice to the Plaintiffs with respect to the mortgages and, as a result, owed a duty to the Plaintiffs.

88.     As described above, BAC and B of A, in the course of its business, repeatedly failed to supply or supplied false information to the Plaintiffs with respect to their ability to qualify or obtain a loan modification.

89.     BAC and B of A failed to exercise reasonable care in making representations to the Plaintiffs, both in writing and verbally.

-19-

FIRST AMENDED COMPLAINT

90.    BAC and B of A also failed to exercise reasonable care and diligence in obtaining relevant and necessary information from the Plaintiffs prior to making representations and giving guidance to the Plaintiffs.

91.    BAC and B of A knew or should have known that the information they supplied, or failed to supply, to the Plaintiffs was inaccurate.

92.    As a result of the representations made by BAC and B of A, the Plaintiffs divulged personal financial information to BAC and B of A and reasonably believed that by providing this information, the Plaintiffs would be able to become current on their loans and keep their Property.

93.    The Plaintiffs have been damaged as a result of BAC's and B of A's misrepresentations in that they now face foreclosure, which may have been avoided had BAC and B of A not misrepresented facts to the Plaintiffs.

### SECOND CLAIM FOR RELIEF
**(Quiet Title against BAC, B of A, and MERS)**

94.    Plaintiffs incorporate and reallege in full paragraphs 1 through 93 of this Complaint.

95.    As set forth above, Plaintiffs acquired title to the Property by executing Promissory Notes and Trust Deeds in October 2004.

96.    Plaintiffs have made payments under the mortgage for more than 5 years, during which time they have built up equity in the Property.

97.    The Plaintiffs' interest in and title to the Subject Property is greater than that of, BAC, B of A, MERS and John Does I and II.

98.    The Plaintiffs have the ability to pay the outstanding debt on the Subject Property should the proper party be determined.

-20-

FIRST AMENDED COMPLAINT

99.     Accordingly, title in the Subject Property should be quieted in favor of the Plaintiffs and against BAC, B of A, MERS and John Does I and II.

### THIRD CLAIM FOR RELIEF
### (PLEADED IN THE ALTERNATIVE)
**(Breach of Covenant of Good Faith and Fair Dealing against B of A and BAC)**

100.     Plaintiffs incorporate and reallege in full paragraphs 1 through 99 of this Complaint.

101.     The Trust Deeds and the Notes constitute valid and binding contracts.

102.     In California, every contract includes an implied covenant of good faith and fair dealing.

103.     BAC and B of A became a party to the Trust Deed and/or Note through the assignment of the Trust Deed and/or Note by AWL, Countrywide, and/or MERS.

104.     As parties to the Trust Deeds and/or Notes BAC and B or A were subject to the implied covenant of good faith and fair dealing.

105.     Upon information and belief, Defendant Does may have become parties to the Trust Deeds and/or Notes through assignment by AWL, BAC, B of A, Countrywide, MERS, or other unknown individuals or entities.

106.     If assigned, Defendant Does were subject to the implied covenant of good faith and fair dealing.

107.     BAC and B of A breached the implied covenant of good faith and fair dealing by, among other things:

       a.   Making representations and material misrepresentations to the Plaintiffs concerning the status of their Notes and the their ability to modify the terms of their Notes;

-21-

FIRST AMENDED COMPLAINT

b.  Failing to present evidence, upon Plaintiffs' numerous pre-litigation written and verbal requests, including letters, regarding the unidentified and/or misrepresented current foreclosor's authority; and

c.  Failing to provide proof that it was (or is) the true holder of the Notes or that it was the authorized agent of the investors in the MBS for purposes of foreclosing the Notes.

108.  Upon information and belief, the Doe Defendants may have violated the implied covenant of good faith and fair dealing in the same manner.

109.  As a direct and proximate result of BAC's and B of A's conduct, and, upon information and belief, the conduct of the Doe Defendants, Plaintiffs have incurred, among other things, substantial damages, in an amount to be shown at trial.

110.  Moreover, Defendants' conduct has forced Plaintiffs to retain an attorney to obtain the benefits they are owed under the Agreement. As such, Plaintiffs are entitled to recover their attorney's fees and costs associated with this lawsuit.

## FOURTH CLAIM FOR RELIEF
### (Accounting)

111.  Plaintiffs incorporate and reallege in full paragraphs 1 through 110 of this Complaint.

112.  Defendants have held themselves out as Plaintiffs' creditors and mortgage servicers. As a result of this purported relationship with Plaintiffs, said Defendants have a fiduciary duty to Plaintiffs to properly account for Plaintiffs' monies paid to them.

113.  As a result of the aforementioned fraudulent and/or negligent conduct, Plaintiffs paid Defendants their mortgage payments for more than five years. However,

-22-

FIRST AMENDED COMPLAINT

for the reasons stated herein, none of this money was actually owed to the named Defendants.  For that reason, these monies are due to be either credited back to Plaintiffs or credited to the rightful holder in due course of Plaintiffs' Note.

114.    The amount of the money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.  Plaintiffs are informed and believe and thereon allege that the amount due to them exceed $75,000.00.

**FIFTH CLAIM FOR RELIEF**
**(Violation of Fair Debt Collection Practices Act,**
**15 U.S.C. § 1692f(6) by Defendants)**

115.    Plaintiffs incorporate and re-allege in full paragraphs 1 through 114 of this Complaint.

116.    The Fair Debt Collection Practices Act (the "Act") prohibits a debt collector from "taking or threatening to take any non-judicial action to effect dispossession or disablement of property if …there is no present right to possession of the property claimed as collateral through an enforceable security interest…."  15 U.S.C. § 1692 f (6).

117.    Defendants qualify as debt collectors under the Act, because they use instrumentalities of interstate commerce of the mails for the purpose of enforcing security interests. 15 U.S.C. § 1692 a (6).

118.    On or about October 5, 2004, the Daniels (as Borrowers) entered into two Trust Deed agreements with AWL (as Lender) for the purpose of securing Plaintiffs' payment obligations under the Notes.

-23-

FIRST AMENDED COMPLAINT

119.     As previously alleged by the Daniels, AWL attempted to assign, sell, transfer, or securitize the Note at some point after funding, thus improperly transferring the Note to an unknown third party.

120.     As alleged by the Daniels herein, AWL attempted to assigned, sell, transfer, or securitize the Note.  Thus, the Defendants are not acting on behalf of the true holder of the Note and have no authority to take non-judicial action to dispossess the Daniels of their Property.

121.     Accordingly, 15 U.S.C. § 1692 f (6), the Court should enjoin the Defendants from conducting a non-judicial foreclosure sale of the Daniels' Property.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that the Court enter its Order herein:

1.     For compensatory, special and general damages in an amount according to proof at trial against all Defendants;

2.     For punitive and exemplary damages in an amount of $5,000,000.00;

3.     For an order enjoining the further disposition of the Property pending resolution hereof;

4.     An order declaring:

(a)     The rights of the parties relative to the Note and the Property;

(b)     That BAC and B of A are not real parties in interest since they are not valid beneficiaries under the Deeds of Trust;

(c)     That subsequent to the initial sale, assignment, and/or transfer of the Note, BAC and B of A are not valid Note Holders with the power to enforce the instrument, including the right to declare default, foreclose or

-24-

FIRST AMENDED COMPLAINT

initiate foreclosure proceedings absent their ability to produce a valid express agency agreement with the Note Holder;

     (d)    That BAC and B of A do not have a valid agency relationship with any true party in interest; and/or

     (e)    That Defendants lack any interest in the Property which permitted them to foreclose or attempt to foreclose the Deed of Trust and/or sell the Property.

     5.    For an order finding that Defendants have no legally cognizable rights as to the Plaintiffs, the Property, Plaintiffs' Note, Deed of Trust, or any other matter based on contract or any of the documents prepared by Defendants tendered to and executed by Plaintiffs;

     6.    The Court issue an order restraining Defendants, their agents or employees, from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

     7.    For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiffs and returning the same to Plaintiffs with interest thereon at the statutory rate from the date the funds were first received from Plaintiffs;

     8.    For costs of suit incurred herein;

     9.    For reasonable attorneys' fees incurred; and

     10.    For such other and further relief as the Court may deem proper.

DATED: November 16, 2011.        CORVUS LAW GROUP, LLC

                           _____/s/ Amy Bingham_____
                           Amy Bingham
                           *Attorney for Plaintiff*

-25-

FIRST AMENDED COMPLAINT

1

**Verification**

2   The undersigned, Benjamin R. Daniels, for himself declare:

3       I am the Plaintiff in the above-entitled action.  I have read the foregoing

4   Complaint and know the contents thereof.  With respect to the causes of action alleged by

5   me, the same is true by my own knowledge, except as to those matters which are therein

6   stated on information and belief, and as to those matters, I believe them to be true.

7       I declare under penalty of perjury under the laws of the state of California that the

8   foregoing is true and correct.

9

10   DATED: November 14, 2011.

11                                 /s/ Benjamin R. Daniels

12                                 Benjamin R. Daniels

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-

FIRST AMENDED COMPLAINT

1   **Verification**

2   The undersigned, Diana L. Daniels for herself declare:

3       I am the Plaintiff in the above-entitled action.  I have read the foregoing First

4   Amended Complaint and know the contents thereof.  With respect to the causes of action

5   alleged by me, the same is true by my own knowledge, except as to those matters which

6   are therein stated on information and belief, and as to those matters, I believe them to be

7   true.

8

9       I declare under penalty of perjury under the laws of the state of California that the

10  foregoing is true and correct.

11

12  DATED: November 14, 2011.

13                                          _____/s/ Diana L. Daniels_____
                                            Diana L. Daniels

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-27-

FIRST AMENDED COMPLAINT